Filed 11/23/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| WILLIAM PARISI,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>RONALD MAZZAFERRO,<br><br>      Defendant and Appellant. | A145643<br><br>(Sonoma County<br>Super. Ct. No. SCV 257142) |

William Parisi obtained a civil harassment restraining order (Code Civ. Proc., § 527.6)[1] against his father-in-law, Ronald Mazzaferro. Among other grounds, Mazzaferro challenges sufficiency of the evidence to support the restraining order and alleges the order imposes unlawful prior restraint on his First Amendment and state constitutional rights. We remand to the trial court to more precisely define the scope of conduct prohibited by the restraining order, but otherwise affirm.

## I.    BACKGROUND AND PROCEDURAL HISTORY[2]

Mazzaferro is a vexatious litigant. The genesis of this appeal and several others to which Mazzaferro is, or has been a party,[3] appears to be litigation resulting in his

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] We summarize the facts in the light most favorable to the judgment. (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1405.)

[3] See, e.g., appeal Nos. A130280, A131076, A131261, A137992, A143446, A144971, A145001, A145643, A145835, A145923, A146585, and A146778. In an unpublished decision in appeal No. A131261, we affirmed the trial court's denial of Mazzaferro's anti-SLAPP motion (§ 425.16) in response to his mother's suit for misappropriation of trust assets, found the appeal to be frivolous, and imposed sanctions. In an unpublished decision in a related appeal (No. A131076), we found that Mazzaferro

replacement as trustee of a living trust.[4]  Parisi is the conservator for a trust beneficiary and dependent adult.  Parisi alleged financial elder abuse and fraud by Mazzaferro and others in a petition he filed on behalf of that dependent adult in the San Francisco Superior Court.

In this matter, Parisi sought protection for himself and his immediate family—his wife and three adult children (Mazzaferro's daughter, two granddaughters, and grandson)—from an ongoing campaign of harassment by Mazzaferro.  In his restraining order petition, Parisi identified 21 litigation matters filed against him in state or federal courts by Mazzaferro, or others acting on his behalf, all of which were resolved in Parisi's favor.[5]  In addition to Mazzaferro's litigation history, Parisi's petition and supporting declarations focused on Mazzaferro's harassment of one of Parisi's daughters at her place of employment, and on series of letters written by Mazzaferro to Parisi's employer and others accusing Parisi of civil fraud and criminal behavior.

In 2010, Mazzaferro repeatedly came to the Sonoma Whole Foods Market where his granddaughter worked, and he followed her around the store.  She was "completely terrified" of Mazzaferro and tried to avoid him.  Mazzaferro wrote a letter to the store's corporate offices complaining she had been rude to him.  She transferred to a store in Santa Rosa to get away from Mazzaferro.  He went to that store several days in a row, greatly upsetting her.  When told by a Whole Foods supervisor not to come to the store anymore, Mazzaferro threatened to sue Whole Foods.  Mazzaferro's granddaughter ultimately obtained a transfer to Nevada to avoid his harassment.

had engaged in sanctionable behavior in the trial court in pursuing the anti-SLAPP motion, but that the sanctions order was procedurally defective.  We remanded for further hearing on the sanctions.

[4] That litigation originated in the San Francisco Superior Court.  Mazzaferro also has litigated in the Sonoma County Superior Court over title to real property held by a family trust, for which his mother serves as trustee.

[5] Mazzaferro's litigation campaign included an involuntary bankruptcy petition filed against Parisi shortly before trial was to commence in Parisi's San Francisco action against Mazzaferro.  This bankruptcy petition was subsequently dismissed on a finding by the court that the petition was false and filed in bad faith.

In 2014, Mazzaferro wrote letters to realtors who had sale listings on two properties owned by his mother. In a March letter to Pacific Union Realty, Mazzaferro called Parisi "scum of the earth filth who preys on the elderly" and accused him, among other things, of falsifying a trust and numerous property deeds; embezzling federal housing funds; facilitating false annuity schemes and setting up false bank accounts; bankruptcy fraud; making false police reports; and threatening to murder Mazzaferro. Mazzaferro alleged Parisi was under investigation by the Sonoma County District Attorney for financial elder abuse of Mazzaferro's mother and was facing imminent arrest for obstruction of justice and "numerous felonies." An April letter was addressed to the supervising broker at Pacific Union Realty and accused Parisi of being involved in interstate real estate embezzlement schemes, federal housing fraud, and recording a "legion" of false deeds to embezzle federal housing monies. Mazzaferro threatened the supervisor with civil, criminal, or administrative "entanglements" as well as a formal complaint to the California Department of Real Estate if the property listings were not cancelled. In a September letter to Pacific Union Realty, Mazzaferro again claimed Parisi was under federal investigation for embezzlement of federal housing funds and falsification of financial records.

In January 2015, Mazzaferro sent a letter to the risk management department for Sonoma County demanding that Parisi, a probation officer, be "fired forthwith." The letter accused Parisi of "criminal activity," including making a false police report, falsification of a trust, and involvement in the "suspicious death" of Mazzaferro's father. Mazzaferro threatened to seek financial damages from the county and cause the probation department "extreme embarrassment" by publicizing the information in the letter if Parisi were not fired immediately. A letter sent the following February demanded an "update" on all actions taken by the probation department against Parisi for the "criminal felonies" Mazzaferro alleged Parisi had committed against him.

In March 2015, Mazzaferro sent letters by certified mail to local businesses regarding a property sold by his mother. Mazzaferro alleged in those letters that Parisi committed financial elder abuse of Mazzaferro's mother, as determined by the Sonoma

3

County District Attorney. Mazzaferro also alleged Parisi was "associated with" a "convicted felon embezzler" and committed "criminal frauds." In a May 2015 letter to the city attorney for Sonoma, Mazzaferro accused Parisi of stalking him and alleged Parisi approached him threateningly in a "drug induced violent rage" in a supermarket parking lot, preventing him from safely getting into his car.[6]

On May 14, 2015, Parisi filed the instant petition, supplemented by exhibits and declarations from his counsel and his wife. Mazzaferro filed a lengthy response. Mazzaferro also filed a "Cross Petition For Civil Harassment Restraining Orders," incorporating the allegations of his previously denied petition for a restraining order against Parisi (see fn. 6). A hearing calendared for June 4 was continued at Mazzaferro's request to permit him to retain counsel. The court issued a temporary restraining order pending full hearing and made a preliminary finding that Mazzaferro's letters were sent with the intent to harass Parisi.

At the continued hearing on July 2, 2015, Mazzaferro appeared with counsel.[7] Parisi and his wife were sworn as witnesses and verified the contents of the petition and supporting declarations and exhibits. Mazzaferro also was sworn as a witness. In his declarations and testimony, Mazzaferro admitted writing the letters at issue. However, he denied in testimony that the letters were intended to harass Parisi and insisted their contents were "absolutely true." As to allegations he harassed his granddaughter, Mazzaferro denied that any of the incidents occurred and denied writing a letter of complaint to her employer. Mazzaferro's daughter testified in rebuttal. At the hearing's conclusion, the court (Hon. Julie Conger) made express credibility findings, telling Mazzaferro, "I do not believe you, sir. I believe that you have given false testimony. I

---

[6] On May 13, 2015, Mazzaferro filed a petition in the Sonoma County Superior Court seeking an elder abuse restraining order against Parisi based on these allegations. Parisi filed a response denying Mazzaferro's assertions. Following a hearing on May 28, 2015, the petition was denied and Mazzaferro was later ordered to pay Parisi's attorney fees.

[7] Counsel orally moved to withdraw. Mazzaferro refused to consent, and the court denied his counsel's motion.

4

am afraid that I—there is just too much to contradict your denials; specifically, the letters that I have reviewed put me in the feeling that you—I cannot believe the remainder of your testimony." The court issued the requested restraining orders, including protection of other family members residing in the Parisi household.[8]

The trial court's oral orders included prohibition of written communications by Mazzaferro to any third parties or governmental agencies with the intent to harass Parisi or his immediate family. Communications by Mazzaferro, which named any of the protected parties, were to be submitted in advance to the court and Parisi's counsel for review. The court noted Mazzaferro would have a right to a hearing on the propriety of any proposed correspondence, but, as a vexatious litigant, he would be required to post a bond for attorney fees if a hearing were requested. A written restraining order was issued and filed on the date of the hearing. Mazzaferro filed a notice of appeal on July 6, 2015. An amended civil harassment restraining order, embodying the additional orally announced terms, was filed July 17, 2015. Mazzaferro's application for permission, as a vexatious litigant, to file the instant appeal (§ 391.7) was granted on July 24, 2015.[9]

## II.   DISCUSSION

Mazzaferro challenges sufficiency of the evidence to support the restraining order.[10] He further asserts the order is an unconstitutional restraint on his rights of

---

[8] The order did not include Mazzaferro's granddaughters because they no longer resided in the Parisi home.

[9] On May 5, 2016, the Supreme Court filed its opinion in *John v. Superior Court* (2016) 63 Cal.4th 91 and ruled the vexatious litigant prefiling rules do not apply to a self-represented litigant who seeks to appeal a ruling in an action where he or she was a defendant in the court below. (*Id.* at pp. 93, 100.)

[10] Mazzaferro objects in passing to issuance of the July 17, 2015 amended order without a noticed motion, but he presents no separately headed argument or citation to authorities on this issue. We decline to consider this argument, since it is not stated under a separate heading, is not sufficiently developed, and is unsupported by citation of authority. (Cal. Rules of Court, rule 8.204(a)(1)(B) [briefs must "[s]tate each point under a separate heading . . . and support each point by argument and, if possible, by citation of authority"]; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830

5

expression and petition under state and federal constitutions.  He also objects to inclusion of his grandson as a protected person and contends the bonding requirement is unenforceable.

A.    *Standard of Review*

We review issuance of a protective order for abuse of discretion, and the factual findings necessary to support the protective order are reviewed for substantial evidence. (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 135 [restraining order under the Elder Abuse Act]; *USS-Posco Industries v. Edwards* (2003) 111 Cal.App.4th 436, 444.)  "We resolve all conflicts in the evidence in favor of respondent, the prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings.  [Citation.]  Declarations favoring the prevailing party's contentions are deemed to establish the facts stated in the declarations, as well as all facts which may reasonably be inferred from the declarations; if there is a substantial conflict in the facts included in the competing declarations, the trial court's determination of the controverted facts will not be disturbed on appeal." (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137–1138.)  Whether the facts are legally sufficient to constitute civil harassment within the meaning of section 527.6 is a question of law reviewed de novo.  (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.)

We engage in a further analysis when a restraining order is alleged to infringe on constitutional rights of expression.  " '[F]acts that are germane to' the First Amendment analysis 'must be sorted out and reviewed de novo, independently of any previous determinations by the trier of fact.'  [Citation.]  And 'the reviewing court must " 'examine for [itself] the statements in issue and the circumstances under which they were made to see . . . whether they are of a character which the principles of the First Amendment . . . protect.' " '  (*Harte-Hanks Communications, Inc. v. Connaughton* (1989) 491 U.S. 651, 688, quoting *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 285.)"

["absence of cogent legal argument or citation of authority allows this court to treat the contentions as waived"].)

(*DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 889–890 [reviewing court must " 'make an independent examination of the entire record' " and independently review factual findings relevant to resolution of First Amendment issues regarding injunction under California trade secrets law].)  Whether a restraining order passes constitutional muster is also a question of law we consider de novo.  (*R.D. v. P.M., supra,* 202 Cal.App.4th at p. 188.)

B.      *Section 527.6*

"Section 527.6 was enacted 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.'  [Citations.]  It does so by providing expedited injunctive relief to victims of harassment."  (*Brekke v. Wills, supra,* 125 Cal.App.4th at p. 1412.)  "The elements of unlawful harassment, as defined by the language in section 527.6, are as follows:  (1) 'a knowing and willful course of conduct' entailing a 'pattern' of 'a series of acts over a period of time, however short, evidencing a continuity of purpose'; (2) 'directed at a specific person'; (3) '[that] seriously alarms, annoys, or harasses the person'; (4) '[that] serves no legitimate purpose'; (5) [that] 'would cause a reasonable person to suffer substantial emotional distress' and 'actually cause[s] substantial emotional distress to the [the person to be protected by the order]'; and (6) which is not a '[c]onstitutionally protected activity.' " (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)  Section 527.6, subdivision (i), requires "clear and convincing evidence that unlawful harassment exists."[11]

---

[11] " ' "The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal." [Citations.]'  Thus, on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' " (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880–881; (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 371, pp. 428–429.)

C.    *Sufficiency of the Evidence*

Despite Mazzaferro's insistence otherwise, the record before us amply demonstrates he engaged in a course of conduct serving no legitimate purpose, evidencing a continuity of purpose that would cause a reasonable person to suffer substantial emotional distress, and which actually caused substantial emotional distress to Parisi. Mazzaferro's abusive and unmeritorious litigation history against Parisi (and against Mazzaferro's mother);[12] his obsessive efforts to thwart transfers of properties in which he held no legitimate interest, and his efforts to harass his granddaughter provide a clear context for the diatribes against Parisi contained in Mazzaferro's correspondence. Mazzaferro further made an unfounded attempt to obtain a restraining order against Parisi. The trial court reasonably found that Mazzaferro's intent was to harass Parisi and that the letters damaged Parisi's reputation and threatened his livelihood. Notwithstanding Mazzaferro's protests of "absolute truth," the trial court could also reasonably infer that Mazzaferro was engaged in a persistent and malicious campaign to unjustifiably damage Parisi's reputation and interfere with his employment.

D.    *Constitutional Limitations*

"Constitutionally protected activity is not included within the meaning of 'course of conduct.' " (§ 527.6, subd. (b)(1).) We have therefore made the required " 'independent examination of the entire record' " and reviewed the facts relevant to the constitutional analysis " ' " 'to see . . . whether they are of a character which the principles of the First Amendment . . . protect.' " " " (*DVD Copy Control Assn., Inc. v. Bunner, supra,* 31 Cal.4th at p. 890.)

"The United States Supreme Court has 'long recognized that not all speech is of equal First Amendment importance. It is speech on " 'matters of public concern' " that is

---

[12] The same trial judge issued an elder abuse restraining order against Mazzaferro in favor of his mother on July 23, 2015. We affirmed that order in an unpublished opinion in appeal No. A146585. Mazzaferro contends this is a related proceeding, and "incorporate[d] by reference" in that case the record filed in this appeal. (Cal. Rules of Court, rule 8.124(b)(2)(A).) We declined to consolidate these matters.

8

"at the heart of the First Amendment's protection." [Citations.]' [Citation.] . . . 'In contrast, speech on matters of purely private concern'—while 'not totally unprotected'— 'is of less First Amendment concern.' [Citation.] When such speech—for example, as in defamation or the intentional infliction of emotional distress—causes damage, civil sanctions may be imposed because ' "[t]here is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas concerning self-government; and there is no threat of liability causing a reaction of self-censorship by the press . . . ." ' " (*Brekke v. Wills, supra,* 125 Cal.App.4th at p. 1409, quoting *Dun & Bradstreet v. Greenmoss Builders* (1985) 472 U.S. 749, 758–761.) " '[T]here are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they "are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." ' " (*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1147 (*Lemen*).)

Mazzaferro's written communications were defamatory.[13] In the March 2014 letter, Mazzaferro accused Parisi, among other things, of civil and criminal fraud, making false police reports, obstruction of justice, "prey[ing]" on the elderly, and of threatening to murder Mazzaferro. The April 2014 letter accused Parisi of involvement in interstate real estate embezzlement schemes and embezzlement of federal housing funds. The September 2014 letter again alleged Parisi was under investigation of embezzlement and falsification of financial records. The March 2015 letter reiterated statements that Parisi had committed financial elder abuse and "criminal frauds." Each letter was sent to

---

[13] "Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." (*Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1179; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 529, p. 782.) While truth of the offensive statement is a complete defense, "it is the defendant's burden to 'justify,' or show the truth of the statements." (*Ringler*, at p. 1180.)

private parties and dealt with matters of private, not public, concern. The January and February 2015 letters were addressed to the Sonoma Probation Department, a public agency, but focused not on questions of public policy or issues of public concern, but rather with renewed allegations by Mazzaferro that Parisi was engaged in civil fraud and "criminal felonies," demanding that Parisi be fired.[14]

Nothing other than Mazzaferro's unsupported averments established that any of the contentions in his correspondence were true, and the trial court found Mazzaferro not credible—a finding that we do not review de novo. (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531 [appellate courts do not reassess witness credibility].) We find nothing in this record that would lead us to disagree with the trial court's implicit conclusion that Mazzaferro's attacks on Paris were false, defamatory, and served no legitimate purpose. While First Amendment protection is required for free and uninhibited discussion of public issues, important social values underlie the law of defamation, and " '[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation.' " (*Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, 22.)

E.    *The Scope of the Restraining Order*

The trial court's order included "Other personal conduct orders . . . on Attachment 6a(4)." The first order specified in Attachment 6a(4) prohibited Mazzaferro from "writ[ing] letters to any third party that within the context of the letters attached as exhibits to the Memorandum of Points and Authorities in Support of Civil Harassment Restraining Order filed in this matter could be interpreted as a pattern of conduct with the intent to harass William Parisi or his immediate family" (hereafter Personal Conduct Order (a)). The second order specified in Attachment 6a(4) further required Mazzaferro,

---

[14] We assume, for purposes of this discussion only, that Mazzaferro's May 2015 letter to the Sonoma City Attorney was constitutionally protected petitioning activity. (See *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 967 ["false" police report protected activity for anti-SLAPP purposes if falsity is contested]; cf. *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703–706 [admittedly false police report did not constitute conduct in furtherance of constitutional rights of petition or free speech].)

"[p]rior to any written communication to any government agency (federal state or municipal) that contains the name of any [protected person], whether in the form of a letter, petition, or otherwise" to "convey a copy of the proposed communication to this Court and [Parisi's counsel]" (hereafter Personal Conduct Order (b)). Mazzaferro contends these requirements constitute an unlawful prior restraint on his constitutional rights of expression. We agree in part, finding the terms of the order require more precise definition in order to pass constitutional muster.

" '[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.' [Citation.] 'The term prior restraint is used "to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." . . . [P]ermanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints.' . . . 'The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment.' " (*DVD Copy Control Assn., Inc. v. Bunner, supra,* 31 Cal.4th at p. 886.)

However, "an injunctive order prohibiting the repetition of expression that ha[s] been judicially determined to be unlawful [does] not constitute a prohibited prior restraint of speech." (*Lemen, supra,* 40 Cal.4th at p. 1153.) In *Lemen,* a restaurant owner filed a civil complaint against a vocal critic of the restaurant neighbor, alleged causes of action for nuisance, defamation, and interference with business and sought injunctive relief against the defendant. Following a court trial, the trial court entered judgment for plaintiff and granted a permanent injunction that prohibited the defendant from making specified defamatory statements about the plaintiff to third persons. (*Id.* at pp. 1144–1146.) As our Supreme Court explained, " 'Once specific expressional acts are properly determined to be unprotected by the first amendment, there can be no objection to their subsequent suppression or prosecution.' " (*Id.* at p. 1156; see *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1419 [upholding order prohibiting husband's dissemination of wife's private cellphone information after that conduct was found to

11

constitute abuse under Domestic Violence Prevention Act]; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 144–145 [injunction prohibiting a course of repetitive speech judicially determined to constitute unlawful harassment in violation of FEHA did not violate the state or federal constitutions].)  An injunction may " 'deprive the enjoined parties of rights others enjoy precisely because the enjoined parties have abused those rights in the past.' " (*Planned Parenthood Golden Gate v. Garibaldi* (2003) 107 Cal.App.4th 345, 352.)

Although we find substantial evidence to support issuance of an order restraining Mazzaferro from continuing what has been judicially determined to be defamation and harassment, we find that the terms of Personal Conduct Orders (a) and (b) lack constitutionally mandated precision.  "[A] court must tread lightly and carefully when issuing an order that prohibits speech. . . . 'An order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order.  In this sensitive field, the State may not employ "means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved."  [Citation.] In other words, the order must be tailored as precisely as possible to the exact needs of the case.' " (*Lemen, supra,* 40 Cal.4th at p. 1159, citing *Carroll v. Princess Anne* (1968) 393 U.S. 175, 183–184.)  "Even if an injunction does not impermissibly constitute a prior restraint, the injunction must be sufficiently precise to provide 'a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.'  [Citations.]  An injunction is unconstitutionally vague if it does not clearly define . . . the conduct prohibited." (*Evans v. Evans* (2008) 162 Cal.App.4th 1157, 1167.)

Personal Conduct Order (a) prohibited Mazzaferro from writing letters to third parties that "within the context of the letters attached as exhibits to the Memorandum of Points and Authorities in Support of Civil Harassment Restraining Order filed in this matter could be interpreted as a pattern of conduct with the intent to harass."  As worded, this prohibition is impermissibly vague and relies on entirely subjective interpretation to determine both prohibited content and intent.  It fails to adequately delineate which of

Mazzaferro's future statements might violate the injunction and lead to contempt of court, and it is not limited to statements which the court has judicially determined to be harassing and defamatory. (See, e.g., *Evans v. Evans, supra,* 162 Cal.App.4th at p. 1169 [preliminary injunction prohibiting party from publishing any " 'false and defamatory' " statements on the Internet is constitutionally invalid].) The court can, however, delineate and identify specific defamatory statements made by Mazzaferro in his prior correspondence, and enjoin their repetition. (See *Aguilar v. Avis Rent A Car System, Inc., supra,* 21 Cal.4th at p. 145.) We will remand to permit the court to amend the restraining order accordingly.

Personal Conduct Order (b)—requiring Mazzaferro to submit "any written communication to any government agency (federal state or municipal) that contains the name of any [protected person], whether in the form of a letter, petition, or otherwise" for prior approval by the court—is also problematic in certain aspects. The trial court unquestionably has the ability to retain jurisdiction to monitor the enforcement of the injunction. (*Lemen, supra*, 40 Cal.4th at p. 1161.) " 'The jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties, and it has power to enforce its decrees as a necessary incident to its jurisdiction. Except where the decree is self-executing, jurisdiction of the cause continues for this purpose, or leave may be expressly reserved to reinstate the cause for the purpose of enforcing the decree, or to make such further orders as may be necessary.' " (*Ibid*.) In addition to evidence justifying the restraining order, the trial court had evidence before it that judicially imposed monetary sanctions were not a deterrent to Mazzaferro,[15] and that he is effectively judgment proof due to substantial tax liens. A party subject to a continuing pattern of defamation should not be required to bring a succession of lawsuits to obtain an effective remedy. (See *id.* at p. 1158.)

---

[15] We also note that Mazzaferro has failed to comply with sanctions orders of this court.

But Mazzaferro may not be constitutionally restrained from true petitioning activity to government officials.[16]  "The right to petition the government for redress of grievances is 'among the most precious of the liberties safeguarded by the Bill of Rights.' " (*Lemen, supra*, 40 Cal.4th at p. 1160.)  Vexatious litigant filing requirements (§ 391.7) may separately limit Mazzaferro's ability to pursue actions in a California judicial forum, but we are aware of no authority that would permit the court to impose an additional requirement barring a litigant from even seeking permission to initiate a claim without prior approval.  Similarly, we find no case that would allow a California court to serve as a gatekeeper for access to a federal forum.  Mazzaferro may be restrained from interfering with Parisi's employment, and from reiterating defamatory statements not otherwise privileged, but the court may not separately restrain his access to judicial or administrative forums.

We will remand for the trial court to modify these personal conduct orders accordingly.

F.      *The Bonding Requirement*

The court required Mazzaferro to post a bond as security for Parisi's attorney fees in the event he sought a hearing on the propriety of any documents required to be submitted for prior approval under Personal Conduct Order (b).  Specifically, the July 17, 2015 amended order stated that, if the court denied Mazzaferro permission to send a communication prohibited under Personal Conduct Order (b), he would "be entitled to a hearing as to whether the communication constitutes a contempt of this order.  Prior to the scheduling of such hearing, [Mazzaferro] shall post a minimum bond of six thousand dollars ($6,000) to cover the cost of [Parisi's] attorneys fees and costs.  The amount of the bond shall be adjusted if it may become insufficient to cover [Parisi's] fees and

---

[16] As we have explained, Mazzaferro's January and February 2015 letters to Parisi's employer address purely private grievances and would not constitute petitioning activity.

14

costs." Mazzaferro complains that such a requirement is inconsistent with the vexatious litigant statutes and cannot be enforced against him as a defendant.[17]

Mazzaferro miscites *Shalant v. Girardi* (2011) 51 Cal.4th 1164 for the proposition that a vexatious litigant bonding requirement can only be enforced against a self-represented plaintiff, and not a self-represented defendant. *Shalant* merely held that the plaintiff in that matter was not subject to dismissal provisions of section 391.7 because he was not self-represented when the action was filed. (*Id.* at pp. 1168, 1171 ["vexatious litigant statutes provide courts and nonvexatious litigants with two distinct and complementary sets of remedies"].) He is correct, however, that the prefiling requirement for a bond (§ 391.7), does not apply to a pro se *defendant.* (*John v. Superior Court, supra,* 63 Cal.4th at p. 100.) But the bonding requirement imposed by the court does not require him to post security as a defendant. It does not, for example, require a bond in order for him to defend against a contempt proceeding. It applies only in circumstances where he seeks affirmative relief from the Personal Conduct Order (b). We need not decide, however, if the court's order could be fairly characterized as a prefiling order under section 391.7. We believe the order is within the court's equitable authority under its retained jurisdiction, in order to enforce the terms of the restraining order and prevent Mazzaferro from continuing his campaign of harassment. (*Lemen, supra*, 40 Cal.4th at p. 1161.) As discussed, the court had already sanctioned Mazzaferro for the harassment petition that he brought against Parisi. The court was cognizant that Mazzaferro previously had been undeterred by judicial sanctions, and monetary sanctions against him could not likely be enforced. Requiring Mazzaferro to provide security for Parisi's costs in the event Mazzaferro sought affirmative relief without justification was not an abuse of discretion under these circumstances.

---

[17] Mazzaferro asserts in passing, without any separately developed argument, that the bonding requirement was imposed without notice or hearing. Even if this argument were not waived (see fn. 10), it is factually incorrect. The court included this requirement in its oral pronouncement on July 2, 2015.

G. *Inclusion of Additional Protected Person*

Mazzaferro objects to inclusion of Parisi's son as a protected person, based on a contention that there was no evidence that Mazzaferro harassed his grandson. The argument is specious. Section 527.6, subdivision (c) provides that "[i]n the discretion of the court, on a showing of good cause, a temporary restraining order or order after hearing issued under this section may include other named family or household members." There was testimony that Mazzaferro's grandson was a member of Parisi household. Moreover, there was evidence Mazzaferro subpoenaed his grandson and three of his grandson's work supervisors to a hearing on the restraining order application who had no knowledge of any of the events at issue. The court could reasonable infer, particularly in light of evidence of harassment of his granddaughter, that Mazzaferro's purpose was to harass his grandson. Mazzaferro does not demonstrate the court abused its discretion in including Parisi's son as a protected person.

## III. DISPOSITION

With the exception of the Personal Conduct Orders (a) and (b) as contained in Attachment 6a(4), the court's order granting Parisi's petition for a restraining order against Mazzaferro is affirmed. The matter is remanded for modification of Personal Conduct Orders (a) and (b) consistent with the views expressed in this opinion. Mazzaferro shall bear Parisi's costs on appeal.

                                            _____

                                            BRUINIERS, J.

WE CONCUR:


_____

SIMONS, Acting P. J.


_____

NEEDHAM, J.


A145643

Superior Court of Sonoma County, No. SCV 257142, Julie Conger, Judge.

Ronald Mazzaferro, in pro. per., for Defendant and Appellant.

Law Offices of Lynn Searle and Lynn S. Searle for Plaintiff and Respondent.