Filed 9/10/25  Sidky v. Baramily CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HUSSEIN SIDKY, | B340064 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. |
| v. | No. 24STRO03267) |
| RAMY BARAMILY, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura D. Cohen, Commissioner.  Affirmed.

Sterling Law Firm and Scott J. Sterling for Defendant and Appellant.

Hussein Sidky, in pro. per., for Plaintiff and Respondent.

———————————

Plaintiff and respondent Hussein Sidky sought and obtained a civil harassment restraining order under Code of Civil Procedure section 527.6 requiring defendant and appellant Ramy Baramily to refrain from harassing or intimidating Sidky, or contacting him directly or indirectly.[1]  Baramily appeals and contends the order is not supported by substantial evidence because the trial court erroneously excluded evidence and testimony offered by Baramily.  We conclude the restraining order is supported by substantial evidence and, even assuming Baramily's evidentiary arguments were not waived, the trial court did not abuse its discretion when it declined to hear testimony from Baramily's witness about texts sent by Sidky to the witness disparaging Baramily.

## FACTS AND PROCEDURAL BACKGROUND

On May 9, 2024, Sidky filed a petition for a civil harassment restraining order against Baramily.  In his petition, Sidky alleged Baramily had threatened Sidky with physical violence, both in person and through multiple social media posts, and on at least one occasion Baramily pretended to have a gun in his waistband.  Sidky also alleged that Baramily was arrested after physically punching Sidky's lawyer in the face, and Baramily is violent and has three other restraining orders against him from other people.  Sidky identified specific dates in the spring of 2024 that the harassment took place, and alleged

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

the harassment occurred on numerous additional occasions in the seven months prior to filing the petition. Sidky asked the court to order Baramily to stay at least 20 yards away from him, his home, car, and workplace. Sidky attached to his petition a number of photos or reproductions of online posts, with some handwriting explaining how the posts were mocking or intimidating him, or how the photos showed Baramily approaching Sidky's car with a threatening demeanor.

At the start of the June 27, 2024 hearing on the merits of Sidky's petition, the court asked Sidky and Baramily if either had any additional witnesses. Sidky said only himself, and Baramily responded that he had a witness if needed. The court accepted the statements in Sidky's petition as part of his direct testimony and asked what else Sidky would like to tell the court. Sidky gave a general description of Baramily's aggressive statements and behavior, stating that Baramily taunted Sidky multiple times, and Baramily bragged about his behavior online in multiple posts that were attached to the petition. Sidky stated that Baramily had a criminal record and three other restraining orders against him, two for beating up his ex-wife and one for beating up another partner. Sidky attributed Baramily's taunting to an ongoing civil lawsuit between Sidky and Baramily. Sidky claimed that because he was winning in the civil lawsuit, Baramily had resorted to threats and intimidation. When the court asked about the status of the civil case, Sidky said a trial was scheduled for November, and started describing an incident where Baramily punched Sidky's attorney outside the place of business that is at the core of the civil dispute. Sidky's responses to questions from the court established that Sidky was not present when Baramily's actions against Sidky's attorney took

place, and the court asked additional questions to focus Sidky's testimony on why Sidky felt that Baramily was harassing Sidky. Sidky responded that Baramily waved his hand and flexed his chest as if he was going to punch Sidky, and "was aggressive towards me, and he was taunting me, and he came inside my window and was cursing and saying numerous, numerous expletives." Sidky testified that Baramily was aggressive towards him in person on March 10, April 12, and May 6, 2024. In response to questions from the court focused on in person, credible threats of violence, Sidky said Baramily twice walked up to Sidky with his hand at his waistband as if he had a gun and said, "get the fuck out of here before you regret it." When the court inquired whether Sidky and Baramily needed to be in contact in the context of the civil case, Sidky responded that it was not acceptable for Baramily to resort to violence and threats of violence, and Baramily was not remorseful for his actions against Sidky's attorney. Sidky clarified that Baramily had not assaulted Sidky, but rather his attorney, but that Baramily had threatened physical violence against Sidky. When asked why he thought the wrongful acts would continue, Sidky responded "whenever I am in the presence of my business, he'll straight up tell me, get the fuck out of here you motherfucker. I'm going to fuck you up, you and your whole family, if you ever get near me again, if you ever get near this business again." On cross-examination, Sidky identified his place of business, which Baramily then contended was his own place of business.

As Baramily started to present his own evidence, the court advised that it would focus on Sidky's allegations that Baramily was making threats to Sidky. When Baramily tried to show the court a video from February 2023, purportedly with Sidky

threatening to cut Baramily's throat, the court asked how the video related to Sidky's allegations about Baramily's threatening statements to Sidky in March, April, and May of 2024. The court ultimately determined that the proffered videos were not relevant to Sidky's harassment allegations. When Baramily provided the court with a copy of an unemployment application filed by Sidky, and Sidky argued that the underlying business dispute was not the focus of the current hearing, the court responded that Baramily "has a right to explain to the court and have his day in court here, and he's presenting some evidence. Some of it you might say is not relevant, but I didn't look at it yet. So I'm looking at it." Baramily next showed the court a video from March 5, 2024, when Baramily claimed Sidky was standing outside Baramily's shop for six hours. The court stated the proffered video showed Sidky recording Baramily, who was also recording the interaction. Baramily offered at least one other similar video from an unknown date, and he argued that Sidky and his lawyer "were standing on the corner just to walk around my office trying to intimidate me." The court reminded Baramily that the focus of the hearing was that Sidky was seeking a restraining order against Baramily.

The court asked about text messages that Baramily offered as evidence that Sidky was attempting to intimidate Baramily's coworkers by sending Baramily's customers and employees photos of Baramily being arrested. Baramily confirmed that the texts were from Sidky to Baramily's witness. The court told Baramily that it would defer discussion of the texts for Baramily's witness. The court directed Baramily to address Sidky's allegations. Baramily denied threatening Sidky, saying "he took videos of everything. If he had the video, he can show it

here.  It never happened.  [¶]  I have the videos with his voice of everything that happened."

When the court asked Baramily about the anticipated testimony from Baramily's proposed witness, Baramily proffered that the witness would testify about text messages where Sidky was threatening to take away Baramily's business.  The court determined such testimony was not necessary.

Based on the evidence before the trial court, the parties' testimony, its credibility determination, and the totality of the circumstances, the court found Sidky met his burden of proof. The court acknowledged the testimony about an ongoing business dispute and an assault on Sidky's attorney, but those matters, along with evidence of threats by Sidky towards Baramily, were separate from the question before the court.  Based on Sidky's testimony, the court found Sidky had shown clear and convincing evidence of harassment sufficient for the court to issue a civil harassment restraining order.  The court limited the order to one year and only to require Baramily to not contact Sidky directly or indirectly, except through an attorney related to the civil case, and to not engage in harassing, intimidating, or abusive conduct towards Sidky.

## DISCUSSION

Baramily contends there is no substantial evidence to support the restraining order issued against him, and the trial court erred by refusing to consider Baramily's video evidence and witness testimony.  We reject both arguments and conclude substantial evidence supports the trial court's order.

6

## A.    *Mootness*

We first consider whether Baramily's appeal is moot, because the appealed restraining order expired on June 27, 2025. Sidky argues that Baramily's appeal is a waste of judicial resources because the appealed order would no longer be in effect by the time appellate briefing was completed.  This court takes judicial notice of the fact that there is a pending request to extend the restraining order.  However, regardless of whether the restraining order is extended or not, we consider the merits of Baramily's appeal because not doing so "would effectively deprive persons affected by injunctions of limited duration from obtaining any judicial review."  (*Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 728 (*Schraer*); see also *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 495–496.)

## B.    *Substantial Evidence Supports the Civil Harassment Restraining Order*

Section 527.6, subdivision (a)(1), provides for injunctive relief from harassment as follows:  "A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section."  The trial court shall issue an order prohibiting harassment upon a showing by clear and convincing evidence of unlawful harassment.  (*E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 698–699 (*E.G.*); *Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1227 [enumerating the elements of unlawful harassment], disapproved of in part on another ground

7

by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4, 1005 (*O.B.*).)

The statute defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).) A "[c]redible threat of violence" is defined as "a knowing and willful statement or course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no legitimate purpose." (§ 527.6, subd. (b)(2).) A "[c]ourse of conduct" is defined in relevant part as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose . . . ." (§ 527.6, subd. (b)(1).) However, constitutionally protected activity is not included within the statutory definition of "course of conduct." (*Ibid.*)

"We review the trial court's decision to grant the restraining order for ' "whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record." ' [Citation.]" (*E.G., supra*, 105 Cal.App.5th at pp. 698–699.) We acknowledge that "an appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the

8

appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*O.B., supra*, 9 Cal.5th at pp. 1011–1012.) "Whether the facts, supported by substantial evidence and construed most favorably in the petitioner's favor, are legally sufficient to constitute civil harassment under section 527.6 is a ' "question[ ] of law subject to de novo review." ' [Citations.]" (*E.G., supra*, 105 Cal.App.5th at p. 699.)

Baramily argues that the restraining order here was not warranted because Sidky did not present sufficient evidence of harassment, either as evidenced by a credible threat of violence or a course of conduct sufficient to constitute harassment. Baramily's argument ignores the fact that the testimony of a single witness can constitute substantial evidence, and we generally defer to the trial court on questions of witness credibility. (*Cameron v. Las Orchidias Properties, LLC* (2022) 82 Cal.App.5th 481, 500.)

In this case, Sidky's testimony regarding the dates, details, and nature of Baramily's harassing words and conduct was sufficient to support the trial court's determination that Sidky had shown by clear and convincing evidence that Baramily had engaged in unlawful harassment by repeatedly engaging in conduct that served no legitimate purpose and that alarmed, annoyed, or harassed Sidky. In response to questions from the

9

court, Sidky testified that on specific dates in the spring of 2024 and additional occasions, Baramily directed threatening words or gestures towards Sidky. These threats included Baramily twice approaching Sidky, posing as if he had a gun and saying, "get the fuck out of here before you regret it." Baramily also threatened on occasions to Sidky that "I'm going to fuck you up, you and your whole family, if you ever get near me again, if you ever get near this business again." Particularly coupled with Sidky's testimony that Baramily had previously punched Sidky's attorney in the face, this testimony forms the basis for the trial court's implicit finding that Baramily made a credible threat of violence, or engaged in a knowing and willful course of conduct that alarmed Sidky, causing him (and any reasonable person) substantial emotional distress. Although Baramily denied making any threats to Sidky, that denial was not credited by the trial court.[2]

Deferring to the trial court's evaluation of the parties' respective credibility and viewing the record in the light most favorable to Sidky (*O.B., supra*, 9 Cal.5th at pp. 1011–1012), we conclude that when considered in the context of the ongoing business dispute between the two parties and Baramily's arrest for assaulting Sidky's attorney at the business location, Sidky's testimony was sufficient for the trial court to find it highly

---

[2] Baramily also contends on appeal that Sidky's failure to present video evidence of the alleged threats is fatal. Sidky was under no obligation to do more than testify, however. Further, Baramily's argument on appeal, that Sidky admitted video evidence would not show any threats, is a misrepresentation of the record. It was Baramily himself—not Sidky—who testified that none of his own videos of interactions with Sidky contained footage of Sidky making any threats against Baramily.

probable that Baramily had engaged in a course of harassing conduct towards Sidky.  In other words, there was substantial evidence to support the trial court's order, and we do not reweigh the evidence on appeal.

## C.  *Exclusion of Witness Testimony*

"[A] person charged with harassment is given a full opportunity to present his or her case, with the judge *required* to receive relevant testimony and to find the existence of harassment by 'clear and convincing' proof of a 'course of conduct' that actually and reasonably caused *substantial* emotional distress, had 'no legitimate purpose,' and was not a 'constitutionally protected activity.' " (*Schraer, supra*, 207 Cal.App.3d at pp. 730–731.)

"We review a trial court's decision to exclude evidence for abuse of discretion.  [Citation.]  The decision to exclude evidence 'will not be disturbed except on a showing [that] the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation].' [Citation.]" (*People v. Peoples* (2016) 62 Cal.4th 718, 745.)

Baramily contends the court refused to consider all relevant evidence, but he does not explain how his proffered witness testimony or video evidence of Sidky threatening Baramily was relevant to the question of whether Baramily had unlawfully harassed Sidky.  Twice during the hearing, the trial court noted that it was only considering Sidky's request for a restraining order, not any assertion by Baramily that Sidky had harassed Baramily.  We conclude that the trial court did not

11

abuse its discretion when it decided to not hear or admit evidence that was not relevant to the issues before it.

## DISPOSITION

The order is affirmed.  Costs are awarded to respondent Hussein Sidky.

NOT TO BE PUBLISHED.


                              MOOR, J.

WE CONCUR:


        HOFFSTADT, P. J.


        BAKER, J.