Filed 5/21/26  Wilhoit v. Pickett CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALLISON ELIZABETH WILHOIT, | B345756 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 24VERO02030) |
| v. | |
| SARA PICKETT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura Streimer, Judge Pro Tempore.  Affirmed.

Law Offices of Vincent W. Davis & Associates and Vincent W. Davis for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

## I. INTRODUCTION

Defendant Sara Pickett appeals from a civil harassment restraining order issued under Code of Civil Procedure section[1] 527.6 (section 527.6) in favor of plaintiff Allison Wilhoit. She contends plaintiff failed to meet her burden of proof. We affirm.

## II. BACKGROUND[2]

A. *Interactions Between the Parties*

In September 2024, plaintiff hired defendant as a personal trainer.

On the night of Friday, November 15, 2024, plaintiff and defendant were celebrating defendant's birthday with a couple of other people, including defendant's boyfriend Erick[3]. Near the end of the night, defendant and Erick had an argument and Erick left the bar alone. Plaintiff and defendant sat together in defendant's car for several hours. Defendant flew into a rage

---

[1] Further statutory references are to the Code of Civil Procedure.

[2] Consistent with the applicable standard of review, we recite the facts in the light most favorable to the ruling granting the restraining order. (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226 (*Parisi*), abrogated on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

[3] The reporter's transcript refers to the boyfriend as "Eric," but the exhibits reflect that his name is "Erick".

because she believed Erick was romantically interested in plaintiff—whom he had met that evening—and that the two were developing an attraction. Plaintiff reassured defendant "hundreds of times" that nothing was going on between her and Erick. Defendant took plaintiff's phone from her and used it to contact Erick. Defendant "tried calling him nonstop." When Erick eventually answered, defendant forced plaintiff to talk to him, but their conversation just made defendant angrier.

Defendant sped off with plaintiff in the passenger's seat and refused to tell plaintiff where they were going. Plaintiff was "terrified" and "begg[ed] [defendant] to pull the car over." Defendant was "slamming on the steering wheel while she was driving. She was screaming." Defendant said she was going to confront Erick. When they arrived at Erick's house, defendant was yelling and "slamming on the horn repetitively, which is then when [Erick] came out of the house." Defendant and Erick began to argue, and then defendant "got out of the car to have a physical altercation with [Erick] … [¶] … [¶] [but] he retreated into the house before she reached him."

While defendant was at Erick's front door, plaintiff "was trying to figure out a way … to get out of the car without passing directly by [defendant] because … [she] didn't want to be in harm's way." When defendant returned to the car, she told plaintiff to go to the house and speak to Erick. Plaintiff rang Erick's doorbell and asked for help. Erick told plaintiff "there was nothing he could do for [her]" and that defendant "goes through episodes like these…." Plaintiff ran away from the house and hid from defendant.

In the subsequent hours on what was now Saturday morning, November 16th, defendant repeatedly telephoned

plaintiff and sent her text messages that scared plaintiff. During the next couple of days, defendant telephoned plaintiff between 20 and 30 times, but plaintiff did not answer the calls. Defendant left plaintiff numerous text, audio, video, and voicemail messages. Defendant's messages to plaintiff included the following statements: "Bitch, I don't know who the fuck you think you are … I'm fucking taking you down you fucking dumb bitch you're playing with fucking fire bitch fuck you you're fucking homewrecker you're fucking slut. Fuck you fuck you [plaintiff] better hope you never run into me. You dumb fucking bitch. You're fucking disgusting. You fucking whore." "It wouldn't be that hard to knock your dumb ass out[.]" "I will annihilate you[.]" "[Y]ou're going down you fuck with the wrong person[.]" "I'd start looking for a new job. I['d] start looking for a new place to live … [j]ust move the fuck out of LA bitch." "I swear to God you better pray to God you don't run into me bitch I will fuck you up."

Plaintiff and defendant lived less than a mile apart and plaintiff felt that defendant had threatened her safety.

B.      *Petition, Hearing, and Order*

On November 25, 2024, plaintiff filed a request for a civil harassment restraining order, pursuant to section 527.6. The trial court issued a temporary restraining order that same day.

On March 11, 2025, the trial court conducted a hearing on the restraining order request at which plaintiff and defendant testified.

Plaintiff described her interactions with defendant. Defendant admitted that she sent text messages to plaintiff

4

because she believed that plaintiff had been intimate with defendant's boyfriend. But, defendant claimed that she "didn't mean it that [she] was really going to, technically, hurt [plaintiff] …." Defendant also claimed that she did not know where plaintiff lived.

Following testimony and the admission of exhibits, the trial court found the following: "[Defendant] believed that [plaintiff] had compromised her relationship with her boyfriend. And that belief was followed up with persistent and really vulgar texting, name calling that went on for several days, multiple phone calls, undisputed. There were at least—I believe there were 20 calls during that period of time, none of which—20 to 30 calls, none of which [plaintiff] responded to. [¶] … [T]he verbose ranting that followed for several days, the texts, the phone calls, the threats … [i]t's the kind of … conduct that would disturb the peace of any reasonable person." The court found plaintiff's version of events credible and concluded that she "had reasonable fear given the threats, given the encounter in the car."

The trial court therefore granted the restraining order for a period of two years, reasoning that plaintiff "met her burden by clear and convincing evidence that she has been the victim of persistent harassment at the hands of [defendant], who may have felt—may have been justifiably upset in the moment, given what she believed to be the circumstances, but that her conduct, in response, was above and beyond and really pretty intimidating and frightening."

Defendant timely appealed.

# III.  DISCUSSION

Defendant argues the trial court abused its discretion when it issued the protective order because (1) defendant had a legitimate reason for her conduct; (2) defendant's text messages were constitutionally protected speech; and (3) plaintiff did not meet her burden to show by clear and convincing evidence that she was "meaningfully threaten[ed]" or harassed.

## A.  *Standard of Review*

When a defendant appeals from an order granting a civil harassment restraining order, we review the trial court's findings for substantial evidence and the court's ultimate ruling for abuse of discretion.  (*Parisi, supra,* 5 Cal.App.5th at p. 1226.)  We review de novo whether factual findings "are legally sufficient to constitute civil harassment under section 527.6 …."  (*E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 699.)

## B.  *Legal Principles*

Section 527.6, subdivision (a)(1) provides that a "person who has suffered harassment … may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section."  Section 527.6, subdivision (b)(3) defines "'[h]arassment'" as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a

reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."

## C.    *Analysis*

### 1.    Legitimate purpose

Defendant contends that her conduct does not constitute harassment because "the text messages had a legitimate purpose."  According to defendant, she messaged plaintiff "because she was [plaintiff]'s trainer; they had a valid contract that [defendant] was trying to enforce; they were friends; and [she] was venting to her friend."

We reject the contention that the messages had a legitimate purpose due to the business relationship of the parties. The record, which includes numerous text and audio messages that included vulgarity and threats, had no legitimate business purpose and instead were intended to alarm, annoy, and harass. And, to the extent defendant suggests that "venting to her friend" was a legitimate purpose for her threats of violence, she offers no authority supporting that proposition.

### 2.    First Amendment

Defendant also contends the trial court violated her First Amendment right of free speech by granting the restraining order.  As a general principle, "'speech that constitutes "harassment" within the meaning of section 527.6 is not constitutionally protected, and the victim of the harassment may

obtain injunctive relief.'" (*E.G. v. M.L.*, *supra*, 105 Cal.App.5th at p. 702.) Moreover, "not all speech is of equal First Amendment importance. It is speech on '"matters of public concern"' that is 'at the heart of the First Amendment's protection.' [Citations.]" (*Dun & Bradstreet v. Greenmoss Builders* (1985) 472 U.S. 749, 758–759, fn. omitted.) Here, defendant left messages for plaintiff, a private party, and that speech involved matters of purely private interest. (See, e.g., *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1404, 1409 [rejecting defendant's claim that an injunction violated his First Amendment right of freedom of speech, explaining that the speech involved there was purely private].) Thus, the restraining order did not violate defendant's constitutional right to free speech.

### 3. Sufficiency of the evidence

Finally, defendant maintains plaintiff did not show by clear and convincing evidence that she was meaningfully threatened or harassed "as evidenced by the fact that [plaintiff] did not file a police report or ask [defendant] to stop texting her." Defendant offers no authority to support her suggestion that either of those activities are requisite to a finding of harassment. The trial court found plaintiff's testimony credible and expressly found that defendant's conduct constituted persistent harassment that disturbed plaintiff's peace. That finding was supported by substantial evidence, including (1) the nature of the defendant's conduct in the car which plaintiff testified "terrified" her; (2) Erick's statement to plaintiff that defendant "goes through episodes like these"; and (3) the 69 pages of screenshots plaintiff provided which documented defendant's communications to

plaintiff over the course of several days, communication which the court characterized as "above and beyond and really pretty intimidating and frightening."

Based on this record, we find no abuse of discretion.

## IV. DISPOSITION

The civil harassment restraining order issued pursuant to section 527.6 is affirmed. No costs are awarded on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

MOOR, J.

9