Filed 3/25/22  Hendrix v. Deane CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| BERNIE D. HENDRIX, | B306205 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STRO07628) |
| v. | |
| ROBERT DEANE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steve Cochran, Judge.  Affirmed.

CDF Labor Law, Dan M. Forman and Allison O. Chua for Defendant and Appellant.

Bernie D. Hendrix in pro. per. for Plaintiff and Respondent.

_____

Robert Deane appeals from the civil harassment restraining order issued against him, protecting petitioner Bernie Hendrix.  Deane argues that the parties were in a labor dispute and that the trial court erred when it did not apply the Labor Code's heightened evidentiary standards.  He also asserts the court erred in (1) failing to grant his request for a continuance, and (2) not giving him notice of hearings.  Finally, he argues the restraining order was not supported by evidence of a threat of future harm to Hendrix.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**1.    *Hendrix's Request for a Civil Harassment Restraining Order***

On November 4, 2019, Hendrix, representing himself, filed a request for a civil harassment restraining order against Deane.  In the request, Hendrix attested to the following harassment:

"Me and Robert Deane [sic] were both camera operators for KTLA5.  On February 21, 2018, I relieved Mr. Deane for a 5 min. break.  Upon Mr. Deane's return from his break, and while I was shooting a live shot, Mr. Deane approached me from the rear and pinned me between the camera panhandles, pinning me against his body (upper and lower extremity) while heavily breathing down my neck.  I immediately turned and squared off with Mr. Deane and asked 'why was he standing so close to me and acting in that manner.'  In an apologetic way, Mr. Deane tried to pet my shoulder (he was actually rubbing my shoulder) and thereafter leaped away and commenced to making animated motions by stooping down and reaching for my testicles with his tongue hanging out.  THIS WAS ALL DONE IN A VERY SEXUALLY EXPLICIT MANNER."  (Emphasis in the original.)

Hendrix also alleged he was afraid the violence would reoccur. They had mutual employers. Hendrix stated that he was "emotionally scared, ashamed, embarrassed, and . . . experiencing restless sleep and nightmares" as a result of the harassment.

The trial court denied Hendrix's request for a temporary restraining order and set the petition for a hearing on November 25, 2019. At that hearing, Hendrix testified to difficulties in serving Deane. The court continued the hearing to December. At the December 16, 2019 hearing, the trial court afforded Hendrix additional time to serve Deane.

### 2. *January 6, 2020 Hearing*

At a hearing on January 6, 2020, Hendrix appeared and reported that his process server served Deane in person on January 2, 2020. Deane was not in court, and no counsel appeared on his behalf. However, attorney Jeff Bils stated he was appearing on behalf of KTLA, and argued that Deane had not been served with notice of the hearing. He also asserted that any service was not timely because the petition and notice of hearing were not served five days before the hearing. Bils asserted he was not authorized to accept service for Deane or represent Deane.

Bils nonetheless suggested that the court could make a ruling on the evidence and argued that a single incident that occurred more than a year ago was insufficient to support the restraining order. The court responded that Bils was not in a position to argue the merits as he was not representing a party to the restraining order. The court gleaned from Bils's arguments that Deane disputed service, and set a hearing on January 29, 2020 at which service would be considered.

### 3.    *January 29, 2020 Hearing*

A January 29th minute order reflects that this hearing was continued to February:  "Pursuant to the request of the [Deane], in order to conduct a hearing on validity of service, the Petition - Civil Harassment filed by Bernie D. Hendrix on November 4, 2019, is continued to February 24, 2020, at 8:30 AM in this department."

### 4.    *February 14, 2020 Hearing*

The next hearing actually was held on February 14, 2020. Bils specially appeared for Deane, to contest personal jurisdiction.  Bils argued Deane had not been served.  The court told the parties that at the next hearing, it would hear testimony to determine whether Deane was served.  The court indicated he expected both the process server and Deane to testify.

In words suggesting he had abandoned the restrictions of his special appearance, Bils then stated:  "This is a labor dispute between union members.  The problem here is that this matter should be in the dispute resolution process under the collective bargaining agreement that governs any dispute that Mr. Hendrix has regarding his employment with KTLA and with other union members."  He asserted that "Mr. Hendrix has also retained counsel and filed a complaint with the Department of Fair Employment & Housing raising this very same February 2018 allegation and this restraining order hearing – that legal process, as well.  There are some serious problems.  We would ask that your honor dismiss this matter, if your honor would be in a position to do that now."[1]

---

[1]    We do not decide whether or not Hendrix retained counsel for an ancillary proceeding, or what significance that might have.

4

The court responded that it would hear that defense once the issue of service was resolved.  The court ordered Bils to file briefing on the "labor dispute" subject matter jurisdiction defense before the next hearing.  The court set the next hearing ten days out.

**5.** ***February 24, 2020 Hearing***

    *A.    The Court Finds Hendrix Effected Service*

At the February 24, 2020 hearing, Hendrix appeared; Bils appeared on behalf of Deane.  Deane was absent.  Hendrix elicited testimony from the process server that she went to Deane's front door and encountered Deane carrying out a white trash bag.  When she said "Robert Deane," the man responded "yes, how may I help you?"  The process server testified that she handed Deane the restraining order documents and told him the documents were legal papers.

Bils submitted a declaration from Deane, but due to his absence, Deane provided no live testimony.  The court found "the presumption associated with the proof of service was confirmed by the witness today, and that the presumption has not been overcome, although it could have been if Mr. Deane might have chosen to be here."  The court found that there was no violation of due process: "We've continued the dates again and again.  There were unsuccessful attempts of service by Mr. Hendrix.  And then it was finally arranged, and then that was challenged.  [¶]  The situation reeks of somebody dodging an appointment in court. First, Mr. Bils comes in; I'm not sure who he's representing, not Mr. Deane.  I don't know if it was the studio or somebody else. Then it was Mr. Deane.  [¶]  I'm – I am not sure what's going on,

---

The record is clear that, in the trial court, Hendrix was self-represented for the restraining order proceedings.

on Mr. Deane's end. However, he [has] been afforded due process. He has been served."

B. *The Court Issues a Two-Year Restraining Order*

The court next proceeded to the merits of the restraining order. Bils requested that "service be effective today, as of today's date." The court declined the request and instructed the clerk to administer the oath to Hendrix.

Bils interjected again and stated he was not prepared to argue the merits of the restraining order application. Bils requested time to respond and file a motion to strike on the basis that the court lacked subject matter jurisdiction pursuant to the Labor, Management, and Relations Act, and because Hendrix's claims relate to a labor dispute between two employees of the same labor union, under California Labor Code section 1138.1.

Without immediately responding to Bils's request for a continuance, Hendrix was sworn. Hendrix confirmed that the contents of his request for a restraining order were true and correct.

The court then indicated that it was inclined to grant the continuance but would condition it on the issuance of a temporary restraining order (TRO). Bils asked for a brief recess to confer with an unidentified person. When he returned to the courtroom, Bils objected to the TRO on the basis that it was outside the statutory timeframe for issuing one. The court laid the blame for the delay on Deane – his unsupported challenge to service of process, and his refusal to come to court. The court said: "It was an invited situation. . . . [¶] We got together within 21 days of service according to [the process server], and then service was contested." Bils contended the hearing was not timely held even before he challenged service.

6

The court replied: "No more. No more. The request for a continuance is denied. The restraining order will issue; okay? And it is going to be for two years" and "on the terms that have been requested by Mr. Hendrix."

Although the court had made its ruling, Bills was undeterred, arguing that the "clear and convincing evidence doesn't show that there was any imminent threat, your honor, at all. [¶] This is all tied to an event that occurred two years ago, your honor. And there's been no testimony and no factual evidence submitted that there's any, any threat of any kind of continuing harm, your honor."

The court stated: "I have Mr. Hendrix saying – just so that the record's clear, if you need to make a record. I've got a declaration from Mr. Hendrix that, in effect, some type of sexual battery, combined with some type of physical bullying, occurred on the date mentioned in the petition." The court continued: "I have a respondent [Deane] who's been given time and time again to come and respond to this allegation, and try to do so, and instead somebody's option to send Mr. Bils down here three, four times, to contest on every ground under the sun. . . ." The court explained: "A civil harassment restraining order can be issued on a couple of grounds under the statute. And one of them is kind of like a course of conduct. But when it comes to like, you know, a battery or something physical, one event is enough."

Regarding the remoteness of the harassing event, the court stated "there's really no like statute of limitations on the event or whatever. And the court is supposed to take into account the staleness of the alleged event to determine whether a restraining order is necessary for the future protection." The court explained that it had wanted to hear from Deane to evaluate the future

7

threat of harm, and said that "Deane has opted to be absent himself from these proceedings repeatedly."

Bils persisted, next arguing lack of subject matter jurisdiction based on the Labor Code. The court told Bils that it had invited briefing on the subject at the last hearing and that Bils failed to file anything to contest subject matter jurisdiction. The court found that "California's statutory [scheme] to prevent forms of civil harassment is not . . . preempted . . . by the Labor Code or other areas of law. [¶] I do not believe that a court lacks subject matter jurisdiction over a civil harassment dispute between two individuals because there's a labor dispute that pends between different parties."

Deane appealed the restraining order.[2] We have taken judicial notice that Hendrix has since applied to renew the restraining order. On its face, Judicial Council form CH-710 (notice of hearing to renew the restraining order) extended the restraining order (which was set to expire in February 2022) to April 1, 2022, the date of the next hearing.

_____

[2] Approximately one month after the trial court issued the restraining order, Deane filed a request to modify or terminate the order. The court denied the request, but stated that the restraining order was not intended to preclude either Hendrix or Deane from their usual places of employment. On the restraining order itself, there is a place for the court to order the restrained person to stay away from various places associated with the person benefitting from the order. One of those places is, "The job or work place of the person . . . ." The box in front of that order is left unchecked.

8

## *DISCUSSION*

Deane asserts (1) the court applied the wrong statute in issuing the restraining order, (2) the court wrongfully denied his request for a continuance, (3) he was not given notice of the February 24, 2020 hearing, and (4) substantial evidence does not support the court's finding of future harm. We address each issue in turn.

### 1.    *Standard of Review*

We review issuance of a civil harassment restraining order for abuse of discretion, and the factual findings necessary to support the protective order are reviewed for substantial evidence. (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7 (*O.B.*).) " 'The appropriate test on appeal is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. [Citation.] But whether the facts, when construed most favorably in [the petitioner's] favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review.' [Citation.]" (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497 (*Harris*).)

We review this issue of statutory interpretation de novo. (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041.) When interpreting a statute, our objective is to ascertain the Legislature's intent, if at all possible, through the plain meaning of the statutory language. (*Ibid.*) "We construe the statute's words in context, harmonizing statutory provisions to avoid absurd results." (*Ibid.*)

## 2. *The Labor Code Does Not Apply to the Restraining Order*

Deane argues that the trial court issued the restraining order under the wrong statute and that Labor Code section 1138.1 and Code of Civil Procedure section 527.3 represent the correct law.[3] The argument is founded on the assumption that Deane's harassment of Hendrix was a labor dispute and the Labor Code's heightened evidentiary standards applied.

Labor Code section 1138.1 provides elevated standards for obtaining an injunction in any case involving or growing out of a labor dispute. Labor Code section 1138.4 states that "labor dispute" as used in that chapter has the same meaning as "labor dispute" defined in Code of Civil Procedure, section 527.3, subdivision (b)(4)(i), (ii), and (iii).

Deane asserts that because section 527.3, subdivision (b)(4)(i), states that labor disputes include cases involving "persons who are engaged in the same industry, trade, craft, or occupation. . . ; whether such dispute is . . . (c) between one or more employees or associations of employees and one or more employees or associations of employees," this case involves a labor dispute. Yet, Deane ignores the remainder of the definition provided by subdivision (b)(4)(iii), which states, "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." (§ 527.3, subd. (b)(4)(iii).) When read together, we conclude that subdivision

---

[3] All further undesignated statutory references are to the Code of Civil Procedure.

10

(b)(4)(i) identifies the parties to, and subdivision (b)(4)(iii) describes the subject matter of, a labor dispute.[4]

Our interpretation is bolstered by the preamble to section 527.3, subdivision (a), which explains that the purpose of the law is "to promote the rights of workers to engage in concerted activities for the purpose of collective bargaining, picketing or other mutual aid or protection, and to prevent the evils which frequently occur when courts interfere with the normal processes of dispute resolution between employers and recognized employee organizations . . . ."

Deane's piecemeal interpretation would mean that *any* dispute between two people in the same industry (even a couple going through a divorce) would be considered a labor dispute. Deane takes the statute's words out of context, and his construction would lead to absurd results.

We conclude that to be a labor dispute, not only must the parties be engaged in the same industry, trade, craft, or occupation (in accordance with subdivision (b)(4)(i)), but the controversy must concern terms or conditions of employment or job-related representation/association (à la subd. (b)(4)(iii)).  As the Rutter Practice Guide states, " 'Labor dispute' means a controversy concerning terms or conditions of workers' employment, union representation, etc." (Edmon & Karnow, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2021) ¶ 9:680, citing section 527.3, subd. (b)(4).)[5]

---

[4]      Subdivision (b)(4)(ii) defines what it means for a person or entity to be "participating" in a labor dispute.

[5]      Deane argued in the trial court that dispute resolution procedures in an applicable collective bargaining agreement

11

### 3. *Denial of Deane's Request for a Continuance Was Harmless*

Deane asserts the trial court committed reversible error when it denied his request for a continuance.  We agree that a respondent to a civil harassment restraining order petition has a right to one continuance.  Section 527.6, subdivision (o) states that "The respondent shall be entitled, as a matter of course, to one continuance, for a reasonable period, to respond to the petition."

However, on January 29, 2020, Deane had already requested and been granted a continuance for the purposing of contesting service.  Deane thus received the one continuance to which he was statutorily entitled.[6]

We also find that Deane suffered no prejudice.  "[A]ny error in failing to grant a request for a continuance—whether mandatory or discretionary—is reversible only if it is tantamount to the denial of a fair hearing.  [Citations.]  There is no presumption of prejudice.  (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)  Instead, the burden to demonstrate prejudice is on

---

apply to this dispute.  To the extent the point is made in conjunction with defendant's "labor dispute" argument, we have rejected that.  Two pages of the bargaining agreement were attached to Deane's papers.  Neither mentions alternative dispute resolution.

[6]     Perhaps the fact Deane had already received a continuance is why Deane did not request a continuance pursuant to section 527.6, subdivision (o) at the February 24, 2020 hearing.  Supposition aside, the fact is that Deane did not request a continuance under the code section.

the appellant." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527–528.)

Here, Deane specifically sought a second continuance to assert that the trial court lacked subject matter jurisdiction by more fully developing his argument that the parties were in a labor dispute.[7]  As we have explained, Hendrix's petition for a civil harassment restraining order was not a labor dispute.

On appeal, Deane does not argue the court lacked subject matter jurisdiction.  (*People v. Lara* (2010) 48 Cal.4th 216, 225, [lack of subject matter jurisdiction may be raised for the first time on appeal].)  Nor does Deane explain on appeal the evidence he would have offered to contradict Hendrix's statements.  In sum, Deane failed to demonstrate prejudice necessary for reversal.

---

[7]  In requesting a continuance, Bils stated "Your honor, before we proceed, Mr. Deane is not prepared to argue the merits of Mr. Hendrix'[s] application.  We had reached out to Mr. Hendrix in order to attempt to reach agreement on a briefing schedule on Mr. Deane's motion, contemplated motion to strike related to lack of subject matter jurisdiction.  [¶]  We offered Mr. Hendrix to take this hearing off calendar, that Mr. Deane would waive service if we would take today's hearing off calendar and agree to a briefing schedule.  [¶]  We did not hear from Mr. Hendrix, your honor.  If we – Mr. Deane's not prepared.  And we would ask for time to respond and file a motion to strike on the basis that the court lacks subject matter jurisdiction."  Although Bils stated he was not prepared "to argue the merits," this appears in the context of his intended argument that there was no subject matter jurisdiction.  Bils did not state he needed a continuance to cross examine Hendrix or present testimony from witnesses who could counter Hendrix's factual allegations.

### *4.    Deane Had Notice of the February 24, 2020 Hearing*

Deane argues he did not receive notice of the February 24, 2020 restraining order hearing.[8] We observe that the court informed defense counsel Bils of that hearing date in open court and even made sure the date was acceptable to Bils before proceeding. Then, Bils appeared on behalf of Deane and argued at the February 24th hearing.

Deane nonetheless asserts he "did not receive notice that the February 24, 2020 hearing would be a merits-based restraining order hearing." We disagree. At the February 14, 2020 hearing, Bils, who said he was "appearing specially," nevertheless tried to assert arguments regarding the merits of the restraining order. The court told Bils it could not consider such arguments until after it ruled on the service issue. The court ordered Bils to file a brief on subject matter jurisdiction—Deane's chief defense—before the February 24th hearing.

It was clear from the court's colloquy with Bils that the trial court planned to rule on issues beyond service at the next hearing. Bils also made several arguments addressing the merits at that hearing. Deane had sufficient notice of the February 24, 2020 hearing.

### *5.    Substantial Evidence Supported the Court's Finding that the Harassment Was Likely to Recur*

"Section 527.6 provides injunctive relief to a person who has suffered harassment." (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 401 (*Russell*).) Harassment is "unlawful violence, a credible threat of violence, or a knowing and willful

---

[8]    Deane also asserts he did not receive notice of the January 29, 2020 hearing. As the court continued that hearing and made no rulings at it, we do not address that argument.

course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).) "An injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris, supra,* 248 Cal.App.4th at p. 496.) If, following a hearing, the court "finds by clear and convincing evidence that unlawful harassment exists, an injunction shall issue prohibiting the harassment." (§ 527.6, subd. (i).) " ' "Clear and convincing" evidence requires a finding of high probability.' " (*Russell*, at p. 401.) When "the clear and convincing standard of proof applied in the trial court, an appellate court should review the record for sufficient evidence in a manner mindful of the elevated degree of certainty required by this standard." (*O.B., supra,* 9 Cal.5th at pp. 1000–1001.)

Deane argues: "Hendrix failed to submit an iota of evidence or any evidence from which the Court may have drawn an inference that harm will or is likely to occur in the future absent injunctive relief. . . . Hendrix offered no evidence of any likelihood of future harm, much less clear and convincing evidence." Defendant's view of the record is myopic. Hendrix attested to Deane pinning him against a camera and pressing his chest and hips or groin against the back of Hendrix's body. When Hendrix turned around and confronted him, Deane rubbed Hendrix's shoulder and made sexual gestures at him. The encounter was an aggressive act of sexual harassment. Deane did not offer contrary evidence. The petition and statements from the parties indicated that Hendrix and Deane continued to encounter each other at work, and that Hendrix feared the harassment would happen again.

15

The court could have reasonably found, based on the egregiousness of the harassing act and the parties' expectation of continued workplace interaction, there was a very strong likelihood the harassment would reoccur without a restraining order. (See *O.B., supra,* 9 Cal.5th at p. 1008 [The appellate court "must indulge reasonable inferences that the trier of fact might have drawn from the evidence; it must accept the fact finder's resolution of conflicting evidence; and it may not insert its own views regarding the credibility of witnesses in place of the assessments conveyed by the judgment."].)

To the extent that Deane argues the harassing event was remote in time, the trial court considered the timeline and assessed that the threat of harm still existed. The trial court attributed much of the delay to Deane's litigation tactics. The court could also have reasonably credited Hendrix's explanation that he had not requested the restraining order sooner because he sought help through his employer—reporting the incident to the stage manager, his manager, and human resources—to no avail. The lack of action by his employer illustrated the existing risk.

Deane relies on *Russell, supra,* 112 Cal.App.4th at pages 401-404, for support. In *Russell*, the petitioner and defendant were lawyers representing opposing parties in a dispute. One attorney sought a restraining order under section 527.6 against the other attorney who had followed him into a courthouse elevator and forcefully grabbed his arm. Based solely on the single battery and without evaluating the likelihood that the harm would reoccur, the trial court issued the injunction under section 527.6. (*Id.* at pp. 400–401.) The Court of Appeal reversed because there was no evidence that unlawful violence was likely

to repeat:  by the time of the hearing on the permanent injunction, the two attorneys were no longer adversaries in the underlying litigation, and they did not otherwise regularly do business with or oppose each other.  (*Id.* at pp. 400-404.)  In words relevant to the present appeal the appellate court cautioned, "There may well be cases in which the circumstances surrounding a single act of violence may support a conclusion that future harm is highly probable."  (*Id.* at p. 404.)

The evidence here showed that there was a likelihood of continued contact between the parties who worked in the same industry and could be expected to have overlapping work assignments.  The trial courts findings were supported by substantial evidence and the court did not abuse its discretion in issuing the restraining order.

### *DISPOSITION*

The restraining order is affirmed.  Respondent Bernie D. Hendrix shall recover his costs on appeal.

RUBIN, P. J.

WE CONCUR:

MOOR, J.

KIM, J.

17