Filed 8/3/22  Avendano v. Wozniak CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARCOS AVENDANO,<br><br>    Petitioner and Respondent.<br><br>    v.<br><br>CAROL WOZNIAK,<br><br>    Respondent and Appellant. | B314359<br><br>(Los Angeles County Super. Ct. No. 21IWRO00368)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN APPELLATE JUDGMENT |

THE COURT:

The above-entitled opinion filed on July 21, 2022 is modified as follows:

On page 4, the third sentence of footnote 3, delete the following language, "On May 24, 2022 we requested Marcos and Wozniak to provide the admitted videos to the court, but we have received no response," and replace it with "On May 24, 2022 we requested Marcos and Wozniak to provide the admitted videos to

the court, but we received no response from Marcos; Wozniak provided her exhibits to the court."

On page 10, delete the last sentence of footnote 7, which reads, "The video is not in the appellate record."

Appellant's petition for rehearing is denied.

There is no change in the appellate judgment.

PERLUSS, P.J.          SEGAL, J.          FEUER, J.

Filed 7/21/22  Avendano v. Wozniak CA2/7 (unmodified opinion)
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| MARCOS AVENDANO,<br><br>　　　Petitioner and Respondent.<br><br>　　　　　v.<br><br>CAROL WOZNIAK,<br><br>　　　Respondent and Appellant. | B314359<br><br>(Los Angeles County Super. Ct. No. 21IWRO00368) |


　　　APPEAL from an order of the Superior Court of Los Angeles County, Patricia J. Titus, Judge.  Affirmed.

　　　Carol Wozniak, in pro. per., for Respondent and Appellant.

　　　No appearance for Petitioner and Respondent.

_____

Carol Wozniak appeals from a restraining order protecting her neighbor, Marcos Avendano, and several members of the Avendano family.[1]  Marcos requested a civil harassment restraining order against Wozniak for conduct spanning almost five years, including Wozniak reporting the Avendanos and their guests to the police on multiple occasions, agitating the Avendanos' dogs to make them bark, and making pejorative comments, including racial slurs.  Wozniak contends her conduct does not meet the standard for civil harassment under section 527.6 of the Code of Civil Procedure[2] because her actions did not constitute a course of conduct and she was provoked into using pejorative language.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *Marcos's Request for a Restraining Order*

On April 5, 2021 Marcos filed a request for a civil harassment restraining order against his next-door neighbor Wozniak.  Marcos based the request on ongoing instances of Wozniak harassing him and his family "on a daily basis," stating Wozniak "verbally assaulted my son-in-law and other guests" and Wozniak "consistently calls the police for no reason, honks incessantly, leaves [the] radio full volume [with] speaker toward our property, [and] taunts our dogs to trigger an animal [services]

---

[1]  We refer to Marcos Avendano and his daughter Fanny Avendano by their first names to avoid confusion.

[2]  Further statutory references are to the Code of Civil Procedure.

2

visit." The request stated the most recent instance occurred on April 4, which was Easter Sunday.

In her response to Marcos's request, Wozniak denied she had harassed the Avendanos, stating the Avendanos "caused . . . disturbances including being up all night, loud noises and 3-4 AM disturbances, and barking dog disturbances which progressed to [the complaint] that [led] to multiple [c]itations." According to Wozniak, the most recent incident occurred on Easter weekend when the Avendanos had a loud party, complete with "loud karaoke music" and "singing and screaming." Wozniak reported the Avendanos to the police because of the noise and the Avendanos blocking Wozniak's driveway with one of their cars. Further, Avendano had been cited by the County of Los Angeles Department of Animal Care and Control for "incessant barking of his dogs."

B.     *The Hearing on Marcos's Request*

Marcos, his wife Astrid Santamaria, and his daughter Fanny testified in support of Marcos's request at the May 4, 2021 hearing. Marcos testified that animosity between the parties started from the time the Avendanos moved next door to Wozniak in 2016. After coming home from church one day, the Avendanos were in their carport with their son, who used a breathing machine, when Wozniak "started to hit the wall and to scream for us to be quiet." In connection with that incident, Wozniak reported the Avendanos to the police for the first time. Thereafter, Wozniak called the police several times concerning the barking of Fanny's two small dogs. According to Fanny, when she moved out of the family home, she took her two dogs with her, but her parents obtained two pit bulls for protection following recent break-ins. Subsequent confrontations related to

3

the two pit bulls. According to Marcos, from 2016 until the hearing, Wozniak reported the Avendanos to the police about 10 times.

Wozniak testified in opposition to the request, explaining she had continuing issues with the Avendanos starting in 2016 with the first two barking dogs (Fanny's), and later when the Avendanos brought home the two pit bulls. According to Wozniak, Marco got up at 3:00 or 4:00 a.m., at which time he let his dogs out. Further, the dogs at that hour "bark enough to wake people up." Wozniak testified the most recent incident of the dogs barking was on April 18, 2021.

Wozniak offered as evidence a video she asserted was of the Avendanos' barking dogs on April 18, 2021, which her attorney played for the court. The court stated as to the video that it could hear a dog barking on the video, but the video did not show any dogs, and therefore the court "couldn't see what dog was barking." Wozniak responded that the Avendanos' black pit bulls could be heard barking on the video. Wozniak's attorney then played another video, which Wozniak stated "obviously" showed the Avendanos' dog. However, the court commented that it would be helpful to see a video that showed the dogs barking. Wozniak stated she videotaped the scene because the police told her she needed to do so to support her excessive-noise complaints.[3]

---

[3] Both Marcos and Wozniak offered videos into evidence, which were played for the trial court and admitted into evidence. The video exhibits are not in the record on appeal. On May 24, 2022 we requested Marcos and Wozniak to provide the admitted videos to the court, but we have received no response. Where applicable, we include the court's descriptions of what the court could see in the videos.

4

1. *The 2019 and 2020 incidents*

Marcos testified about four allegedly harassing incidents in 2019 and 2020, and he played videos of the incidents for the court. According to Marcos, on June 11, 2019 Wozniak played her radio loudly while facing in the direction of the Avendanos' home, with the intent to disturb the Avendanos, as shown in a video played for the court. Marcos testified Wozniak had done this repeatedly in the past and as recently as Easter Sunday in 2021. The trial court described the video as showing Wozniak's "window was open and that the radio was coming from the inside of [her] house."

Wozniak testified in response that she played her radio loudly so she could hear it in her backyard, not to annoy the Avendanos, and she only did this on "a few weekends" for a short period of time. Further, Wozniak was "playing [the radio] to [herself]" in her yard.

Marcos testified further that as shown on another video taken on March 24, 2020, Wozniak opened and closed her window repeatedly and made noises to make the Avendanos' dogs bark. The trial court, upon viewing the video, stated, "It appears that someone is at the window across the way, opening and closing the window, and the dog is barking." However, the court stated it could not identify Wozniak and could not discern if "she is doing anything affirmative to cause [the Avendanos'] dog to bark."

Marcos also testified as to a May 9, 2020 incident in which Wozniak was hitting a fence to taunt Avendanos' dogs. Marcos played a video of the incident for the trial court, but the court noted the video was blurry and the court could not tell who was shown in the video. Marcos testified further that on June 6, 2020 Wozniak ran "across the fence" with a bag to make the dogs bark.

5

The trial court viewed a video of the incident, but again, the court could "barely [see] somebody in the corner" of the video.

Fanny testified that on multiple occasions Wozniak was "taunting and provoking" the Avendanos' dogs, and the dogs' "normal reaction" was to bark. Fanny stated Wozniak engaged in the taunting behavior in person or as reflected in the videos 20 or more times.

Wozniak denied the Avendanos' videos showed her taunting the Avendanos' dogs or that she did anything with the fence that caused the dogs to bark. Further, the Avendanos were cited for excessive dog barking in October 2019 and March 2020. Wozniak offered into evidence, and the court admitted, two citations from County of Los Angeles Department of Animal Care and Control.[4] The trial court described the 2019 citation as imposing a $60 fine for "a black and white pit bull," and the 2020 citation involved "a large dog, black and white pit bull."

2.      *Easter Sunday 2021 Confrontations*

On April 4, 2021 the Avendanos and Wozniak had two confrontations. According to Marcos, the Avendanos were celebrating the Easter holiday with family and guests when Wozniak started to honk her car horn. When Marcos's son-in-law approached Wozniak, she called him a "piece of trash" and a "bastard." Santamaria likewise testified that at some point

---

[4]      The two animal control citations were marked as Exhibits C and D and admitted by the court, but they are not in the appellate record. We augment the record with the animal control citations, which are attached to Wozniak's opening brief. (Cal. Rules of Court, rule 8.155(a)(1)(A).) It is not clear from the citations whether they are for one or two barking dogs.

6

during the Easter celebration, Wozniak "screamed at the son-in-law that he was trash" and called him "bad words" like "bastard" in front of his young daughters. Further, according to Santamaria, Wozniak was standing behind a tree using her cell phone to videotape the Avendanos.

According to Fanny, the police came to their home around 2:00 p.m., about an hour after the family gathering started. The officers "came in and out" of the party after about five minutes, checking on what was happening at the Avendanos' home without raising any concerns. The gathering continued until about 5:00 or 6:00 p.m.

Fanny and Santamaria testified about a second incident that occurred later the same day. Marcos played a video taken at approximately 8:00 that evening, which he asserted showed the confrontation.[5] The trial court noted after viewing the video of the interaction between Fanny and Wozniak, that it could hear someone in the video "yelling, saying they will get a restraining order" and "'screw you.'"

Fanny testified Wozniak was upset with her because Fanny had parked her car on the street in front of Wozniak's house. Wozniak told Fanny that she had called the police for the second time that day. According to Fanny, Wozniak crawled through the bushes and videotaped the Avendanos in their backyard. Wozniak did this on April 4 as well as a "couple of months" earlier. Further, Fanny and Marcos testified that Wozniak called Fanny a "'wetback.'"[6] Marcos testified Wozniak called him or a

---

[5]  The trial court read the time stamp into the record at the hearing.

[6]  The term "wetback" is "used as an insulting and contemptuous term for a Mexican who enters the U.S. illegally."

7

family member by a pejorative name "four or five times" since they moved into their home.

Wozniak testified the Avendanos were having a "very loud party" that started on Friday and continued until Sunday. Further, the son-in-law had parked his car in a manner blocking Wozniak's driveway, and she was forced to honk her horn for several minutes before he moved his car. Wozniak called the police because the party was continuing when Wozniak left her home that evening. Wozniak left "to get away from the noise" of the party.

In response to the trial court's inquiry of Wozniak whether she called the Avendanos any names, Wozniak responded the Avendanos had followed her to the entrance to her driveway and were "taunting [her] and calling [her] names—bitch and all of that, various names." Wozniak explained, "I did return a negative name to them after they called me bitch and other names." Wozniak admitted she had videotaped the party, but she claimed she did not videotape the Avendanos on other occasions.

### 3. *The trial court's findings and order*

At the conclusion of the hearing, the trial court found Marcos met his burden of proof, explaining the "plethora of detailed incidents that [Marcos] has detailed fall into the category of disturbing the peace." The court explained that

_____

(See Merriam-Webster's Online Dict. (2022) <https://www.merriam-webster.com/dictionary/present> [as of July 7, 2022].) "The term [w]etback originated in the circumstances that many [Mexican nationals] swim or wade across the Rio Grande River to enter the United States." (*Diaz v. Kay-Dix Ranch* (1970) 9 Cal.App.3d 588, 590, fn. 1.)

8

"having the police repeatedly called on you where you're just having a family gathering—whether it rises to the level of a party or not, but during daylight hours when you're entitled to have family parties," is disturbing the peace. The court recounted the incidents in which Wozniak called the police to report noise, including reporting noise from Avendano's son's breathing machine, children playing "in the backyard during the day," and the Avendanos celebrating the Easter holiday, which "just sounded like somebody having fun at a party." The court observed that even if the Avendanos had "used karaoke," there was no evidence the celebration continued into the night when a noise ordinance would have required "things to be quiet."

The trial court added that "[i]f there weren't the pejorative statements, I probably would not issue the restraining order. . . . To me if this was something that was always going on, the issue about the noise, there is no reason to throw race in it." Up until that time, the Avendanos were "trying to manage" the dispute, but Wozniak's name calling including "bastard" and "wetback" was "just unreasonable." Further, even if Fanny called Wozniak a "bitch," Wozniak calling Fanny a "'wetback' . . . was an unreasonable response for what was going on at the time." And Fanny's response of "'go screw you'" was to the "'wetback'" comment.

The trial court issued a three-year restraining order barring Wozniak from contacting Marcos, Fanny, Santamaria, and Marcos' son and granddaughter, calling law enforcement for noise complaints "unless after hours specified by [the] municipal code," and speaking to the Avendanos' guests. The order does not prevent Wozniak from calling animal control to report the Avendanos' dogs' excessive barking.

C.   *Wozniak's Request for Reconsideration*

On May 14, 2021 Wozniak filed a request for reconsideration and to dismiss the restraining order. Wozniak submitted video from a doorbell camera on a neighbor's house that she obtained after the May 4 hearing. Wozniak argued the video showed a car associated with the Avendanos blocking her driveway on April 4, 2021, corroborating her testimony as to why she was honking her horn that day and showing that Marcos misled the court when he denied his son-in-law had blocked the driveway.[7] On June 29 the trial court denied the request, finding Wozniak failed to meet the requirements for reconsideration under section 1008.[8]

Wozniak timely appealed.

## DISCUSSION

A.   *Governing Law and Standard of Review*

Section 527.6, subdivision (a)(1), provides, "A person who has suffered harassment . . . may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section." Harassment is defined as "unlawful

---

[7]   The June 17, 2021 declaration of Luis Castillo, the neighbor who provided the doorbell camera video, stated, "This video shows a red van pulling in parallel to the driveaway [at Wozniak's address] at the time of 6.10 PM on 4/4/21, Easter Sunday, which blocked that driveway." The video is not in the appellate record.

[8]   The trial court's June 29, 2021 minute order denying the request for reconsideration indicates the matter was called for a hearing at which the parties testified. The record on appeal does not include a transcript of the June 29, 2021 hearing.

violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).)

A course of conduct is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email." (§ 527.6, subd. (b)(1).) "Section 527.6 was enacted 'to protect the individual's right to pursue safety, happiness, and privacy as guaranteed by the California Constitution.' [Citations.] It does so by providing expedited injunctive relief to victims of harassment." (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1412; accord, *Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1227, disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7 (*O.B.*).)

The trial court may issue a restraining order only after finding "by clear and convincing evidence that unlawful harassment exists." (§ 527.6, subd. (i).) "The statute does not require the court to make a specific finding on the record that harassment exists, nor does it require specific findings of the statutory elements of harassment as defined in subdivision (b)." (*Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105, 1112, disapproved on other grounds in *O.B., supra,* 9 Cal.5th at p. 1010, fn. 7; accord, *Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 92.) Rather, the granting of the restraining order "necessarily implies" the trial court found there was conduct constituting harassment under section 527.6. (*Ensworth*, at p. 1112

11

[upholding issuance of injunction under section 527.6 based on implied finding appellant engaged in harassing course of conduct that caused substantial emotional distress where appellant followed her prior psychologist, surveilled her house, called her repeatedly, and sent her threatening letters after the psychologist terminated treatment].)

On appeal from the issuance of a restraining order, "'[t]he appropriate test . . . is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence in the record. [Citation.] But whether the facts, when construed most favorably in [the petitioner's] favor, are legally sufficient to constitute civil harassment under section 527.6, and whether the restraining order passes constitutional muster, are questions of law subject to de novo review.'" (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497; accord, *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.) "[W]hen presented with a challenge to the sufficiency of the evidence associated with a finding requiring clear and convincing evidence, the [reviewing] court must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*O.B., supra*, 9 Cal.5th at p. 1005.) "[T]he appellate court must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at p. 996.)

B.    *Substantial Evidence Supports the Trial Court's Findings Under Section 527.6*

Wozniak contends the trial court erred in issuing the restraining order because the court relied on "one single [un]substantiated event"—the Easter Sunday confrontation during which Wozniak used a racial slur—in granting the restraining order, which did not constitute a "course of conduct" of harassment under section 527.6.  In making this argument, Wozniak points to the trial court's comment that "'[i]f there weren't the pejorative statements, I probably would not issue the restraining order.'"  Wozniak asserts further she only used pejorative language during the April 4 confrontation in response to being threatened and stalked, and the Avendanos using profanities against her.  The trial court's order was supported by substantial evidence from which the court could have made the finding of clear and convincing evidence of harassment.  (See *O.B., supra*, 9 Cal.5th at p. 1005.)

Contrary to Wozniak's contention, the Avendanos testified there were numerous additional instances from 2019 through 2021 in which Wozniak called the police to the Avendanos' home for minimal noise, played her radio loudly to annoy the Avendanos, agitated the Avendanos' dogs, and called one of the Avendanos a racial name (for example, on multiple occasions saying "shut up, Mexicans").  Further, the court admitted videos of four incidents that Marcos claimed showed harassment. Although the videos were not entirely clear as to what was occurring, according to the trial court's description, at least two generally corroborated the Avendanos' testimony.

As discussed, the trial court was not required to state expressly each instance that supported its decision to grant the restraining order, and the granting of the restraining order

13

"necessarily implies" the trial court found there was conduct constituting harassment under section 527.6. (*Ensworth v. Mullvain, supra*, 224 Cal.App.3d at p. 1112.) Further, in addition to the Easter weekend confrontations, the trial court found a "plethora of detailed incidents . . . [that] fall into the category of disturbing the peace," citing the testimony that Wozniak called the police to report the noise from the Avendanos' son's breathing machine and on another occasion the children playing in the backyard. Thus, although the court reasoned the confrontations on Easter Sunday in which Wozniak used pejorative names tipped the scale in favor of a restraining order, the court did not base its issuance of the restraining order on this single occasion, instead finding Wozniak engaged in a harassing course of conduct.

Moreover, Wozniak's contention the restraining order must be reversed because she made the racial slur to Fanny on Easter Sunday in response to "being stalked, harassed and intimidated by the Petitioners and their family members" lacks merit. During cross-examination, Wozniak testified that Santamaria and Fanny "were following me onto the entrance of my driveway" and "were taunting me and calling me names" like "bitch and all of that." However, the trial court found that even if Wozniak made a racial slur in response to Fanny calling her a "bitch," this "was an unreasonable response for what was going on at the time." We defer to the court's finding, made after viewing the video of the Easter Sunday confrontation, that the conduct by the Avendanos was not sufficient to justify Wozniak's use of a racial slur in response. (*See O.B., supra*, 9 Cal.5th at p. 996; *City of Glendale v. Marcus Cable Associates, LLC,* (2014)

14

231 Cal.App.4th 1359, 1385.)[9]  And, of course, a racial slur can never be justified.

C.     *The Trial Court Properly Denied Wozniak's Motion for Reconsideration*

Wozniak contends the trial court erred in denying her request for reconsideration because the court failed to consider the new evidence and law Wozniak presented, including the video from Castillo's doorbell camera and the Los Angeles County noise ordinances.  The court did not abuse its discretion.

Section 1008, subdivision (a), provides that a party may make a motion to reconsider a prior order "based upon new or different facts, circumstances, or law."  "'A party seeking reconsideration also must provide a satisfactory explanation for the failure to produce the evidence at an earlier time.'"  (*Yolo County Dept. of Child Support Services v. Myers* (2016) 248 Cal.App.4th 42, 50; accord, *Torres v. Design Group Facility Solutions, Inc.* (2020) 45 Cal.App.5th 239, 243.)  "[T]he moving

---

[9]     Wozniak also contends it was a violation of her "due process rights not to have the opportunity to review the [Avendanos'] videos" before they were presented at the hearing.  She argues that if she "had the ability to view the [Avendanos'] videos and then comment on them, she would have been able to prove that" her comment was made in response to members of the Avendano family "threatening her, stalking her and using profanities toward her."  However, Wozniak did not object to the Avendanos' evidence at the hearing and therefore forfeited her right to challenge the evidence on appeal.  (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1020 ["The failure to object or move to strike evidence at trial forfeits any challenge to the evidence on appeal."]; *Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726.)

party's burden is the same as that of a party seeking new trial on the ground of 'newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial.'" (*Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192, 1198 (Italics omitted).) "We review the trial court's ruling on a motion for reconsideration for abuse of discretion." (*Torres*, at p. 243; accord, *Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1339.)

With respect to the video from Castillo's doorbell camera, Wozniak failed in her request for reconsideration to explain why she was not able to produce the video at the time of the hearing. Wozniak contends in her opening brief that she "had no idea [the video] existed at the time of the . . . hearing." However, the video from April 4, 2021 clearly existed at the time of the hearing on May 4, 2021, and Wozniak did not present any evidence it was unavailable to Wozniak at that time. (See *Yolo County of Child Support Services v. Myers, supra*, 248 Cal.App.4th at p. 50 [upholding trial court's denial of motion for reconsideration because "the documents Myers submitted appear to have been in existence or at least available to him at the time" he submitted his first motion].)

In her request for reconsideration, Wozniak argued the two noise ordinances showed she "was fully within her rights in calling the police" for the Avendanos' "noise disturbance." However, the two ordinances do not constitute "new law" under section 1008. (See *Baldwin v. Home Savings of America, supra*, 59 Cal.App.4th at p. 1198.) Moreover, Wozniak's response to Marcos's request for a restraining order referred to the "loud parties," "loud karaoke music, singing and screaming from Petitioner's household," and thus, there is no reason Wozniak

16

could not have presented the noise ordinances to support her position at the hearing.  There is likewise no merit to Wozniak's argument that the trial court misstated the law in referring only to noise limitations applicable at night.  The fact the court observed the celebration occurred during the day, not at night, does not mean the court was unaware of noise restrictions that applied during the day.[10]

## DISPOSITION

The order is affirmed.  Wozniak is to bear her own costs on appeal.

FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.

---

[10] In her supplemental memorandum in support of her motion for reconsideration, Wozniak argued she "verified that the noise coming from Petitioner's karaoke on April 4, 2021 definitely exceeded 50 decibels," the limit imposed by Los Angeles County Code ordinance section 12.08.39.  But Wozniak failed to provide evidence at the hearing (or in her motion for reconsideration) of the decibel level of noise generated by the family celebration.