Filed 8/23/24  Chen v. Cui CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| DORA CHEN, | B330808 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 20PDRO00836) |
| YING CUI, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Timothy Martella, Judge.  Affirmed with directions.

David F. Schmidt, for Defendant and Appellant.

Dora Chen, in pro. per., for Plaintiff and Respondent.

_____

Ying Cui appeals from a civil harassment restraining order enjoining her from contacting her neighbors, contending insufficient evidence supports the order, which in any event violates the Code of Civil Procedure and is overbroad. We find no merit in these contentions and affirm with directions to conform the restraining order to the trial court's bench ruling.

## BACKGROUND

On August 7, 2020, Dora Chen petitioned the Los Angeles Superior Court for a civil harassment restraining order against Cui, her next-door neighbor, alleging several incidents of harassment in 2019 and 2020. As pertinent here, Chen alleged Cui brandished a stun gun at her husband in 2019 and a revolver at her and her eight-year-old son on July 30, 2020. (Cui was arrested for brandishing the revolver.) Chen requested that Cui be ordered to stay at least 20 yards away from her and her family members, their home, car and workplace, and the children's school.

The court issued a temporary restraining order (TRO) to this effect on August 10, 2020, without a hearing, ordering Cui to stay at least 20 yards away from Chen and her home. The order also stated that it did "not prevent [Cui] from going to or from [her] home." The TRO was set to expire on September 1, 2020.

Proceedings to determine whether the TRO should be made permanent were continued nine times at Cui's request while her criminal matter proceeded. That matter was ultimately dismissed after Cui completed a 26-week anger management program.

The civil matter was heard on April 10, 2023, two years and eight months after the gun incident. At the beginning of the hearing the trial court offered Cui the use of a translator, as had

been provided in her criminal proceedings, but Cui declined the offer, representing her English was adequate for the proceeding.

Chen testified that during disputes over trimming and watering shrubbery at a common fence line, Cui brandished a stun gun at her husband in 2019 and a revolver at her and her eight-year-old son on July 30, 2020. In the first incident, Chen testified, Cui activated the stun gun in a threatening manner, saying, "It's not for you, it's for your dog." Cui was standing on a ladder on her own property, and Chen and her family were on their property, separated by a tall chain link fence. In the second incident, with the families again on their respective properties, Chen testified that Cui waved and pointed an "old fashioned revolver" at her and her young son. When Chen asked, "Are you pointing a gun at me?" Cui replied, "It's not for you, it's for your husband."

Scott Warren, Chen's husband, testified that during the stun gun incident, Cui "produced a hand-held device that emitted a spark [and] had two points on it." "It was very loud, and it had a blue spark," he testified, and Cui was "thrusting it at" his family, albeit from behind a chain link fence and too far away to make contact. Warren testified that during the revolver incident, Cui "was waving this gun and yelling and screaming" and "pointing it at" Chen and their son.

Cui testified that hers and Chen's properties were separated by a fence, with Chen's property 15 feet higher in elevation than Cui's, such that someone standing on an eight-foot ladder on Cui's side would still be below the ground level of Chen's side. She never pointed a gun at Chen or her family, Cui testified, but she did once activate a stun gun to drive away Warren's corgi, which he had sicced on her while she was pruning

3

a persimmon tree at the shared fence line. Cui denied having anger management issues and stated that even her anger management counselors admitted she had none.

To impeach Chen's testimony, Cui presented a transcript of Chen's police interview, in which she said Cui "waved" the gun at her from 30 feet away, and contrasted it with her petition, wherein she alleged Cui "pointed" the gun at her from point blank range. Cui also observed that in Chen's interview, she said Cui pointed the gun at her (although she could not remember in which hand Cui allegedly held the gun), but in her petition she alleged Cui pointed it at both her and her son. Finally, Cui presented evidence that in Chen's police interview, which occurred at her home, Chen demonstrated that she could not see down into Cui's yard unless she leaned over to look through the chain link fence. Cui presented supporting photographs of the layout of the property, fence, and shrubbery.

Cui offered several incident reports concerning other disputes between the families to establish context for the instant dispute, but the court deemed most of them to be irrelevant. Schmidt, Cui's husband and attorney, offered to testify about Warren shouting at Cui during the gun incident but the court found any such evidence would be irrelevant.

In closing, Cui argued that Chen was not a credible witness, as evidenced by the discrepancies between her police interview and TRO petition, and by her failure to disclose the things her family had done to Cui's family in the past. Cui argued that a 20-yard stay away order would prevent her from using her own property, but if the court found good cause to issue such an order, it should run only for three years from the July 30, 2020 gun incident, i.e., for another four months.

The court found that Cui "waved [a] gun toward people on the other side of the fence" in 2020, "waved the gun at the petitioner in a threatening manner," and attempted to intimidate her with a stun gun in 2019. It stated that because the parties were separated by "a gigantic fence that the dog could not get over," Cui had "no reasonable reason" to activate the stun gun other "than to intimidate the people on the other side of the fence and/or the dog." The court found Cui was not remorseful and had learned little in her anger management classes.

At the conclusion of the hearing, the court stated it would issue a civil harassment restraining order to run for three years from the date of the hearing, including a 20-yard stay-away order. The court informed Cui, "[Y]ou can do anything within the boundaries of your property that are legal. Meaning you can go right up to the property line. And if the trimming you wish to do you feel is legal and it is legal, you're free to do that."

Thereafter, the court signed and issued a civil harassment restraining order to run for three years from the date of the hearing. It included a 20-yard stay-away order as well as a provision that "[t]his stay-away order does not prevent you from going to or from your home or place of employment."

## DISCUSSION

Cui contends the restraining order is unsupported by substantial evidence and is overbroad because it restrains her for more than the five years allowed by Code of Civil Procedure section 527.6, and because its 20-yard stay-away order prevents her from living at her own residence.[1]

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

## A.    Legal Principles

A person who has suffered harassment may seek "a temporary restraining order and an order after hearing prohibiting harassment."  (§ 527.6, subd. (a)(1).)  "Harassment" includes "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose.  The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."  (§ 527.6, subd. (b)(3).)  A " '[c]ourse of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose . . . ."  (*Id.*, subd. (b)(1).)  Although not expressly provided in section 527.6, case law has established that "[a]n injunction restraining future conduct" under that statute "is only authorized when it appears that harassment is likely to recur in the future."  (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 499 (*Harris*).)

Section 527.6 distinguishes between a "temporary restraining order" and an "order after hearing."  (See, e.g., § 527.6, subd. (a)(2) [referring to "a temporary restraining order or order after hearing, or both"].)  A TRO "may be issued with or without notice, based on a declaration that, to the satisfaction of the court, shows reasonable proof of harassment of the petitioner by the respondent, and that great or irreparable harm would result to the petitioner."  (§ 527.6, subd. (d).)  Such an order shall remain in effect for up to 21 days unless otherwise modified by the court.  (§ 527.6, subd. (f).)

6

The trial court may thereafter issue a civil harassment restraining order if it "finds by clear and convincing evidence that unlawful harassment exists." (§ 527.6, subds. (g), (i).)

"We review issuance of a protective order for abuse of discretion, and the factual findings necessary to support the protective order are reviewed for substantial evidence." (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226 (*Parisi*), disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989.) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*O.B.*, at pp. 1011-1012.) In deferring to the trier of fact's determinations as to the credibility and weight of the evidence, we disregard evidence contrary to the judgment. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582 (*Schmidt*).)

"Whether the facts are legally sufficient to constitute civil harassment within the meaning of section 527.6 is a question of law reviewed de novo." (*Parisi*, *supra*, 5 Cal.App.5th at p. 1226.)

**B.    Application**

**1.    Substantial Evidence Supports the Restraining Order**

Here, substantial evidence indicated that Cui knowingly and willfully engaged in a course of conduct directed at Chen that

seriously alarmed and harassed her and served no legitimate purpose, a course of conduct that would cause a reasonable person to suffer substantial emotional distress and actually caused Chen such distress.  Chen and Warren testified that Cui activated a stun gun in an intimidating manner in the presence of Chen's family in 2019, and waived or pointed a revolver at Chen and her son in 2020.  The trial court implicitly found Chen's and Warren's testimony to be credible.

"[T]he testimony of a single witness, even a party, may alone constitute substantial evidence." (*Chase v. Wizmann* (2021) 71 Cal.App.5th 244, 257.)  Although Cui provided contrary testimony and disputed Chen's version of events, under the applicable standard of review we disregard that contrary evidence.  (See *Schmidt*, *supra*, 44 Cal.App.5th at p. 582.)

Although the trial court made no express finding that the harassment was likely to recur, "[a]bsent indication to the contrary . . . we must presume that the trial court followed the applicable law and understood that it was required to find that future harm was reasonably probable." (*Harris*, *supra*, 248 Cal.App.4th at p. 500.)  This implicit finding of probable future harm was also supported by substantial evidence.  The parties' testimony established an ongoing and escalating tension between the families, so the 2020 gun incident, although the first of its kind between the parties, was not an isolated incident.  Further, the parties are neighbors sharing a property line, so it is very likely they will continue to encounter one another.  Under these circumstances, substantial evidence supported the trial court's conclusion that two incidents of intimidation justified restraint of Cui's future conduct.

Cui argues Chen was not a credible witness because her memory was demonstrably faulty, statements she made to police diverged from those she alleged in her petition and repeated at trial, and the physical layout of the adjoining properties made Chen's version of events infeasible. For example, Chen told police only that Cui *waved* a gun at her from 30 feet away but alleged in her petition that Cui *pointed* the gun at her *and* her son from point blank range. Moreover, Chen could not remember in which hand Cui allegedly held the gun, and in any event, the 15-foot difference in elevation between the properties made it improbable that Chen even saw a gun in Cui's hand, much less felt harassed by it.

These were all factual matters to be resolved by the trier of fact. A discrepancy in a witness's statement might reflect an effort to deceive, but it might simply reflect a changing memory or interpretation. Few people can repeat a narrative the exact same way in successive retellings. Determining whether a discrepancy reflects the witness's deception or an honest mistake requires observation of the demeanor of the witness and evaluation of the depth of the discrepancy relative to all the circumstances, both of which are within the trial court's purview.

Here, the purported discrepancies in Chen's statements were minimal. There is no real difference between a person waving a gun at someone and pointing one, as both actions are designed to intimidate and harass. Nor, when a gun is involved, is there any real difference between point blank range and a range of 15 feet. In either case the aggressor's behavior serves no legitimate purpose and the target's apprehension is objectively reasonable. Chen's first statement about Cui pointing a gun at her and the second statement about Cui pointing it at both Chen

9

and her son do not even amount to a discrepancy, as both could be true. (Chen did not tell police that Cui brandished the gun *only* at her.) Finally, just because Chen did not remember in which hand Cui held the gun—an immaterial detail—did not compel the factfinder to conclude her memory was so untrustworthy as to make her testimony incredible.

In short, whether vagaries in Chen's testimony impugned her credibility was a matter for the finder of fact. We do not reweigh evidence on appeal.

Cui argues that Chen failed to prove her allegations that Cui "pointed" a gun at her at "point blank" range. This was not required. Chen was required only to prove "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).) Cui waving a gun at Chen from 15 feet away constituted sufficient harassment to support the restraining order.

Cui argues that Chen failed to prove more than one incident of harassment and failed to prove future harm was likely. We disagree. Chen proved two instances of harassment, not one. From these incidents and the neighbors' proximity and Cui's lack of remorse, the trial court could reasonably find that future harm was likely. Cui argues that the stun gun incident was an exercise of self-protection, as it was possible for Warren's corgi to squeeze through a gap in the fence separating his and Cui's property. But the trial court found Cui activating the stun gun was not directed at the dog but was instead an attempt to intimidate Chen. Whether Cui was protecting herself or trying to intimidate Chen is another factual question we may not revisit on appeal.

10

Cui argues the trial court improperly refused to consider (1) evidence of prior disputes between Warren and Cui, (2) evidence that Warren shouted at Cui, and (3) evidence of "mitigating" factors such as Cui's good character and employment, all of which was relevant to Cui's "right to self-protection." We disagree.

Absent a statutory exception, only relevant evidence is admissible. Evidence is relevant if it has any tendency in reason to prove or disprove any disputed fact of consequence to the determination of an action. (Evid. Code, § 210.) "We review the trial court's rulings regarding the admissibility of the evidence for an abuse of discretion. [Citation.] A trial court's decision to admit or exclude evidence ' " 'will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice.' " ' " (*People v. Mataele* (2022) 13 Cal.5th 372, 413-414.)

Here, the issue was whether Cui brandishing a stun gun and revolver at Chen and her family constituted harassment. That she did so to defend herself against Chen and Warren was irrelevant, for two reasons. First, no dispute between Warren and Chen on the one side and Cui on the other justified Cui brandishing either a stun gun or revolver, as no evidence suggested Warren or Chen either had physically attacked or threatened to attack her. Similarly, no amount of shouting by Warren at Cui during the gun incident justified Cui brandishing a gun at Chen. (Cui did not contend that Warren shouted at her when she brandished the stun gun.) And no justification existed for Cui to brandish a weapon at Chen's children. Therefore, the trial court could reasonably conclude that Cui's self-defense claim, and her good character and employment record, had no tendency in reason to disprove Chen's harassment claim.

**2. The Order is Not Overbroad**

    **a. The order does not restrain Cui for more than three years**

Cui argues the civil harassment restraining order is overbroad in duration, as it extends to more than five years from the date of either the gun incident or the TRO. We disagree.

A civil harassment restraining order "issued after notice and hearing . . . may have a duration of no more than five years." (§ 527.6, subd. (j)(1).) Here, the civil harassment restraining order has a duration of three years. This is permissible.

Cui grounds her argument on a calculation from the date of the incident of which Chen complained, or at least from the date of the TRO. She offers no authority supporting such a calculation, and we have discovered none. On the contrary, subdivision (j)(1) of section 527.6 states the "order," meaning the civil harassment restraining order, which may be issued only "after notice and hearing," shall have a duration of no more than five years. The clear implication is that the five-year period begins to run from the date the civil harassment restraining order is issued, not the date of any underlying incident or of the TRO.[2]

---

[2] To be sure, the restraint effected by both the TRO (approximately two and a half years from the date of the incident) and the civil harassment restraining order (another three years) added up to more than five years, but the delay was of her own choosing, as she requested nine times that the injunction hearing be postponed while her criminal matter proceeded to its conclusion.

### b.    The order does not prevent Cui from using her residence

Cui argues the restraining order impermissibly prevents her from occupying her own home.  She bases this contention on the fact that, prior to the hearing, various iterations of the temporary restraining orders included language similar to the judge's oral statement quoted above, to the effect that the stay away order did not prevent Cui from using her property, yet the final written order did not include similar language.  Respondent contends that the record is clear that the trial court confirmed to Cui that she was free to use and occupy her property and that this was "understood by both parties."

We disagree with the premise of Cui's argument because the final order is most fairly read as permitting Cui to occupy and use her home.  It is true that the civil harassment restraining order enjoins Cui to stay at least 20 yards away from Chen and her family and it is also true that the families live in such close proximity that the 20 yard boundary would extend onto Cui's property.  However, the order also provides that "[t]his stay-away order does not prevent you from going to or from your home or place of employment."  We construe this provision as limiting the stay-away order and permitting Cui to not only go to and from her home but also to engage in any lawful activity while there, as the trial court explained at the hearing.  Nevertheless, because this limitation, which is standard language in the Judicial Council form mandated for use in civil harassment restraining order cases, may be misunderstood in the context of this case, and in the interest of providing clarity for the parties as well as any law enforcement officials who may be called upon to enforce

13

the order, we will direct the trial court to conform the restraining order to its bench ruling.

### c. The restraints are reasonable

Cui argues that the restraining order, which enjoins her to stay away from Chen's car, place of employment and children's school, and bars her from communicating with Chen and her family by letter, email or text, is overbroad because nothing in the record suggests Cui ever encroached or considered encroaching on Chen or her family in these manners. No authority of which we are aware limits a trial court's discretion to restrain a harassing party only in the specific vectors of past harassment. Because Cui adduces no authority to support her argument, we deem the issue forfeited. (See, e.g., *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [failure to develop a claim with reasoned legal argument and supporting authority forfeits the issue].)

## C. Conduct of the Hearing

Cui argues the trial court exhibited "some sort of improper animus, bias, or . . . discrimination" because it prevented her from reading prepared statements from the witness stand, which she argues was essential for her defense, "especially with her language limitations." We disagree. At the beginning of the hearing the trial court asked whether Cui needed a translator, as she had had in her criminal proceedings. Cui and Schmidt said there was no need, representing that her English was adequate. She cannot now complain that she needed a translator to testify. And no authority obligates a trial court to permit a witness to read from prepared statements.

Cui argues without citation to the reporter's transcript that the trial court cut off much of her testimony and angrily dressed

14

her down "with a baseless accusation that she had learned nothing from her anger management classes."  Because Cui supports the argument with no cogent argument or specific citations to the record, we deem it forfeited.  (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1245, fn. 14.)  In any event, as discussed above, the court enjoys broad discretion to restrict evidence to relevant, material matters.  The bare fact that the court curtailed testimony does not suggest an abuse of that discretion.  We have read the entire reporter's transcript and discern nothing untoward in the court's conduct of the hearing.

## DISPOSITION

The order granting an injunction under Code of Civil Procedure section 527.6 is affirmed with directions to conform the stay-away order to the trial court's oral clarification at the hearing concerning Cui's ability to engage in any legal activities within the boundaries of her property.  Chen is awarded costs on appeal.

NOT TO BE PUBLISHED

KELLEY, J.[*]

We concur:

BENDIX, Acting, P. J.              WEINGART, J.

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.