Filed 3/6/26  Hurtado v. Jones CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LORENZO HURTADO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DONALD JONES,<br><br>    Defendant and Appellant. | B345337<br><br>(Los Angeles County<br>Super. Ct. No.<br>25PSRO00391) |

APPEAL from an order of the Superior Court of Los Angeles County, Susel Carrillo-Orellana, Commissioner. Affirmed.

Lorenzo Hurtado, in pro. per., for Plaintiff and Respondent.

Wade Litigation and Amiel L. Wade for Defendant and Appellant.

\* \* \* \* \* \*

Lorenzo Hurtado obtained a civil harassment restraining order protecting him and his daughter against their neighbor, Donald Jones. On appeal, Jones argues that Hurtado failed to meet his burden of proving harassment by clear and convincing evidence, and that the trial court accordingly erred in granting the civil harassment restraining order. Because Jones's arguments lack merit, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts[1]

#### A. *The Parties*

Jones and Hurtado own neighboring residential properties in Pomona. The properties share a border, but the homes are accessed by driveways on different streets. Jones moved into his residence in September 2020, and Hurtado moved into his residence in August 2021. When Hurtado moved in, he went to Jones's door to introduce himself. The first thing Jones said to Hurtado was, "hold up, let me put my gun down," an exchange that Hurtado found "kind of scary."

#### B. *The Boundary Dispute*

Within a few months of moving in, Hurtado decided to renovate his driveway. Jones accused Hurtado of encroaching on his property and disagreed with Hurtado's assessment of the precise property line. As a result, Hurtado asked Jones to split the cost of a land survey. Jones refused, so Hurtado paid for the land survey himself. Jones "blatantly refused" to acknowledge

---

[1]    Consistent with the applicable standard of review, we recount the facts in the light most favorable to the prevailing party and indulge all reasonable inferences in favor of the trial court's findings. (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 499 (*Harris*).)

the results of the survey and continued to accuse Hurtado of encroaching on his property, including by sending Hurtado letters threatening legal action.

### C. *Surveillance*

Hurtado began to feel that Jones was "always watching" him. When Hurtado was remodeling his driveway, Jones "would come to the other street and watch th[e] project every single day," causing the construction workers to feel uncomfortable. Anytime Hurtado was outside doing yard work, he would "look over at [Jones's] house and [Jones would be] standing at his window just staring out." Jones would frequently drive by Hurtado's house "slowly," which concerned Hurtado because, to do so, Jones had to pass his own driveway and turn down another street. Hurtado felt that Jones was "fixated on watching" and "constant[ly] surveill[ing]" him.

### D. *Blowing Leaves on Hurtado's Daughter*

Jones would frequently dump trash from his yard work onto Hurtado's property, and anytime Hurtado, his girlfriend, or his young daughter would step into their yard, "within a minute or two [Jones] would come out and start blowing leaves" along the shared property line.

On one occasion, Hurtado's then-three-year-old daughter was playing under a tree five feet away from the property line when Jones started blowing leaves and dirt in her direction "trying to scare her away." Since that incident, Hurtado has not allowed his daughter to play on the side of the yard that borders Jones's property.

### E. *Threatening Hurtado's Cat*

On another occasion, Jones confronted Hurtado about Hurtado's cat defecating in Jones's yard. He told Hurtado that

he "'hate[s] cats'" and that he would "'kill that cat'" if it came onto his property. The next day, Hurtado's cat got "extremely sick" and lost its appetite for over a week. As a result, Hurtado no longer allows the cat outdoors.

### F. *Flying Drones Over Hurtado's Property*

Hurtado noticed that anytime he was doing any construction on his home, a drone would appear over his property "close enough that [he] knew there was a camera on it." In September 2023, a drone flew "directly" in Hurtado's backyard during a barbecue, causing Hurtado's family to become nervous. When Hurtado confronted Jones, Jones admitted the drone belonged to him, but refused to stop flying it. As recently as February 2025, Jones continued to threaten to fly the drone over Hurtado's home, telling him during a video-recorded conversation, "I'll fly [the drone] again, and if you're home tomorrow I'll fly it."

### G. *Interfering with Hurtado's Privacy Hedges and Cutting Down Oak Tree to Gain Unobstructed View into Hurtado's Home*

In an attempt to gain privacy, Hurtado planted 85 hedges along his property line. The 10 hedges along the border between Hurtado's and Jones's properties were the only hedges to die shortly after Hurtado planted them. When Hurtado tried to replace those hedges, Jones crossed the boundary into Hurtado's yard and attempted to physically remove the hedges. Jones told Hurtado that he was going to cut down an oak tree on the border between their properties. The oak tree's branches provided cover that blocked Jones's view into Hurtado's bedroom and Hurtado's daughter's bathroom, and Hurtado felt that Jones had threatened

4

to cut the tree down as "retaliation" for Hurtado "just trying to have privacy."

Hurtado then erected a fence along the border between his and Jones's properties. Because Jones refused to sign a common fence agreement, Hurtado placed the fence on his property six inches away from the border and routed the fence around the oak tree that was directly on the property line.

Later, Jones threatened to cut down the oak tree again. He told Hurtado that his reason for doing so was to avoid the tree damaging the fence Hurtado erected, but when Hurtado urged Jones not to cut down the tree, explained it created "considerable privacy," and offered to move the portion of the fence that was near the tree, Jones followed through anyway. Cutting down the tree revealed a camera on Jones's property directly facing Hurtado's bedroom window.

### H. *Escalated Interactions*

On various occasions, Hurtado confronted Jones about the property dispute and Jones's behavior. Their conversations often "escalated" into "arguments" where Jones "acted aggressively" and got "hostile." On more than one occasion, Jones mentioned to Hurtado that he owned "several guns" and had a permit to conceal carry them. This, combined with Jones's "constant surveillance," caused Hurtado to fear for his and his daughter's safety.

## II. Procedural Background

### A. *Application for Civil Harassment Restraining Order and Issuance of Temporary Restraining Order*

On February 28, 2025, Hurtado filed an application for a civil harassment restraining order protecting himself and his daughter from Jones. That same day, the trial court granted a

5

temporary restraining order requiring Jones to stay at least 40 yards away from Hurtado, his daughter, his home, his car, his workplace, and his daughter's school. Jones opposed the request on March 11, 2025.

**B.** *Violation of Temporary Restraining Order*

On March 12, 2025, Jones violated the temporary restraining order by walking on Hurtado's driveway three times throughout the day. Hurtado documented these violations on video and contacted the police.

**C.** *Hearing and Issuance of Civil Harassment Restraining Order*

On March 17, 2025, the superior court held a hearing on Hurtado's application for a civil harassment restraining order. After hearing testimony from both Hurtado and Jones, and reviewing video and photograph evidence, the court found, "[l]ooking at the totality of th[e] case" and based on its "credible determination," that Hurtado had established a "course of conduct" by Jones constituting harassment. The court issued a three-year civil harassment restraining order against Jones, which required Jones to relinquish his firearms, refrain from contacting Hurtado and his daughter, and stay at least 100 yards away from Hurtado and his daughter when in public, as well as from Hurtado's car, workplace, and Hurtado's daughter's school, and to stay at least 10 yards away from Hurtado, Hurtado's daughter, and Hurtado's home when Jones was "residing/entering/exiting his home."

**D.** *Appeal*

Jones filed a timely notice of appeal on March 27, 2025.

## DISCUSSION

Under California's civil harassment restraining order statute, a person may obtain a restraining order if they prove by clear and convincing evidence that "harassment" has occurred and is likely to recur. (Code Civ. Proc., § 527.6, subds. (a)(1), (i)(1); *Harris, supra*, 248 Cal.App.4th at p. 499.)[2] For this purpose, "harassment" is defined, in relevant part, as "'(1) "a knowing and willful course of conduct" entailing a "pattern" of "a series of acts over a period of time, however short, evidencing a continuity of purpose"; (2) "directed at a specific person"; (3) "[that] seriously alarms, annoys, or harasses the person"; (4) "[that] serves no legitimate purpose"; (5) [that] "would cause a reasonable person to suffer substantial emotional distress" and "actually cause[s] substantial emotional distress to the [person to be protected by the order]"; and (6) which is not a "[c]onstitutionally protected activity."'" (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1227, overruled on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4 (*O.B.*); *Leahy v. Peterson* (2023) 98 Cal.App.5th 239, 257; § 527.6, subd. (b)(1), (3).)

We review the trial court's factual findings supporting a restraining order for substantial evidence. (*Harris, supra*, 248 Cal.App.4th at p. 497.) This means that we view the record in the light most favorable to the party who obtained the restraining order, and we defer to the trial court's credibility determinations and its implicit and explicit resolution of conflicts in the evidence; we do not reweigh the evidence. (*Id.* at p. 499.) "When reviewing a finding that a fact has been proved by clear and convincing

2      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

7

evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*O.B.*, *supra*, 9 Cal.5th at p. 1011.)  We review de novo whether those factual findings "are legally sufficient to constitute civil harassment under section 527.6." (*Harris*, at p. 497.)

Hurtado presented substantial evidence of harassment that was likely to recur.  For years, Jones had been closely watching Hurtado's every move, watching him from his yard or window or flying his drone over Hurtado's house "every time" Hurtado was outside in his yard.  When Hurtado repeatedly attempted to gain privacy from Jones's prying eyes, Jones interfered with those attempts.  On top of this, Jones threatened to kill Hurtado's cat (after which the cat immediately suffered a mysterious illness), blew leaves onto Hurtado's young daughter while she was playing in Hurtado's yard, and escalated nearly all of his interactions with Hurtado into arguments.  A reasonable person would be "seriously alarm[ed or] annoy[ed]" and would suffer substantial emotional distress if constantly surveilled in their own home by a neighbor who had expressed hostility towards them.  (§ 527.6, subd. (b)(3); *Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105, 1110 [emotional distress may be inferred from circumstantial evidence], overruled on other grounds by *O.B.*, *supra*, 9 Cal.5th 989.)  Jones's years-long course of conduct and the fact that he violated the temporary restraining order also support the trial court's conclusion that the harassment was likely to recur.  Thus, the trial court did not err in granting Hurtado's request for a civil harassment restraining order.

Jones resists this conclusion with what boils down to five arguments.

First, Jones argues that Hurtado's account of events is "without corroboration" and is "contradict[ed]" by Jones's version of what happened. To the extent Jones asks us to reweigh the evidence and make our own credibility determination, that is beyond our purview on appeal. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.) To the extent that Jones suggests Hurtado's testimony alone is insufficient to meet Hurtado's burden of proof, this is unsupported by the law, which provides that "the testimony of a single witness, even a party, is sufficient to provide substantial evidence to support a factual finding." (*Fariba v. Dealer Services Corp.* (2009) 178 Cal.App.4th 156, 171.)

Second, Jones stresses that Hurtado could not establish harassment because there is no evidence that Jones threatened violence or committed violence against Hurtado. Section 527.6 defines harassment as "unlawful violence, a credible threat of violence, *or* a knowing and willful course of conduct" meeting certain conditions. (§ 527.6, subd. (b)(3), italics added.) Here, the trial court expressly found harassment under the third, "course of conduct" category, which does not require a finding of threatening or violent conduct.

Third, Jones argues that sending letters threatening litigation in response to a legitimate boundary dispute cannot form the basis of harassment because such activity is protected under the First Amendment. (See § 527.6, subd. (b)(1) [excluding "[c]onstitutionally protected activity" from the definition of "course of conduct"]; *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 663.) Jones is correct, but our analysis rests on the other

9

harassing conduct we have detailed, not in his protected activity of asserting his property rights.

Fourth, Jones argues that he and Hurtado were merely involved in "ordinary neighbor disagreements" and that under section 527.6, subdivision (b)(1)-(3), "'neighbor quarrels, property disputes, and annoying but lawful conduct'" do not constitute harassment. The purported quote Jones cites does not appear in Code of Civil Procedure section 527.6. Moreover, Jones's behavior of constantly surveilling Hurtado and his family went beyond the scope of the types of "inconveniences and annoyances" one can expect "from the reasonable use of property by neighbors." (See *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 763.) By engaging in a pattern of surveillance, implicit threats and disruptive use of his leaf blower and drone, Jones's behavior crossed the line into the realm of harassment.

Fifth and finally, Jones argues that his behavior does not meet the definition of harassment because he had "legitimate explanations for every alleged act." For example, Jones claims he flew his drone for "recreational, lawful use," that he installed the camera on his house for "security due to trespassers," and that he blew leaves for "yard maintenance." Jones is correct that to constitute harassment, a course of conduct must "serve[] no legitimate purpose." (§ 527.6, subd. (b)(3).) But where there is evidence to support a finding that an act was done "for a purpose other than to meet [a] legitimate need," that act may constitute harassment notwithstanding the possibility that the same act could have a legitimate purpose in different circumstances. (See *Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 812.) Here, the trial court was not required to accept Jones's explanations for his conduct and was entitled to infer from the frequency, timing, and

context of Jones's actions that they were part of a concerted effort to harass Hurtado.  (*E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 700 [trial court must review the evidence "as a whole, including incidents that, if viewed in isolation, might seem trivial, but cumulatively could constitute a harassing course of conduct"].)

## DISPOSITION

The order is affirmed.  Respondent is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
                HOFFSTADT

We concur:


_____, J.
BAKER


_____, J.
MOOR

11